WICKER, Judge.
Jacqueline Wilcox, intervenor in this child custody proceeding, appeals a change in the custody of her grandchild, Dawn Onderdonk. We affirm.
The underlying litigation in this proceeding was between Sheri McGuire Onderdonk and her first husband, John Onderdonk, parents of Dawn and another child, John IV. Sheri and John married when she was *1139 only fifteen years old. In January 1985, John had no job and he and Sheri were living in their car. They voluntarily relinquished custody of Dawn, fourteen days old, to Jackie the paternal grandmother, and John IV, one year and three months old, to the maternal grandmother.
Sheri and John were divorced on October 22, 1986. Sheri was awarded legal custody of Dawn, although Dawn has in fact lived with Jackie since January of 1985, with Sheri having visitation during this time.
Because she apparently feared Sheri would not return Dawn after one of her visits, Jackie intervened in Sheri’s and John’s divorce proceeding to obtain legal custody of the child. Dawn had now been with her grandmother from January 1985 until October 1987.
C.A. Cowardin, M.D. evaluated Dawn, Sheri, and Jackie for the purpose of making a recommendation concerning custody. In December Sheri and Jackie reached an agreement concerning custody; and they entered into a consent judgment on January 26, 1988, which gave custody of Dawn to Jackie and ordered the parties to work out a plan of visitation.
Sheri moved for a new trial, or visitation, or change in custody two months later; and that motion was tried on May 12,1988. The trial judge denied the new trial, granted daily visitation, and ordered an evaluation of Sheri for visitation purposes. Dr. Cowardin did a second evaluation in July, but Sheri filed pleadings asking for yet another evaluation. She also, in August, filed a rule for contempt and attorney’s fees, alleging Jackie’s interference with her visitation in that Jackie took Dawn to Texas for the weekend without notifying her.
Several different settings for the evaluation and contempt rules were made and continued. When the hearing on contempt came for trial on October 19, 1988, the trial judge proceeded as though custody were the issue before him; and no one objected to trying the custody issue. Sheri, Jackie, and Dr. Cowardin testified. The trial judge ordered custody changed to Sheri, with the physical transfer mandated immediately. Jackie was awarded onee-a-week visitation. At this point Dawn had been with her grandmother practically since birth, a period of three years and nine months; and Dr. Cowardin was unshakable in her opinion that it was in Dawn’s best interest to remain with Jackie, her psychological parent.
I can’t tell you exactly what’s going to happen to this child or any other child. All I can tell you is that the reasons the people in my field make the recommendation that this kind of relationship not be broken is because there is so much documentation of the fact that once you mess up a parent-child relationship and destroy a child’s basic sense of trust, and this is one of the other major things, you have anxiety, you have rage and you have a — the loss of trust. In other words, the child experiences as somebody pulling the rug out from under them and they never really know whether to count on ' anybody else after that. And this becomes a permanent part of the child’s developing personality and it can have negative effects well into adulthood, it can effect [sic] the child’s capacity for parenting in adulthood.
The trial judge reasoned, “When the parent competes with the non-parents of the child, the parent’s right to custody is superior unless the parent is unable or unfit, having forfeited parental rights”, citing Powell v. Barsavage, 399 So.2d 1308 (La. App. 4th Cir.1981). He found no evidence that Sheri was unfit or unable to provide a home for Dawn and concluded, “The court cannot stand in her way that [sic] if she wants to claim them.”
Jackie applied for writs to this court, and we granted the writ and ordered it converted to an expedited appeal. No. 88-C-846. She complains of several alleged errors by the trial judge: failure to give her proper notice that custody would be determined at the October 19th hearing; failure to have a full evidentiary hearing prior to removing custody from her; applying the wrong legal standard for resolving a custody dispute between a parent and a non-parent; failing to apply the La.C.C. art. 146 standard of the best interest of the child; failing to utilize the theory of “psychological *1140 parent”; and failing to consider that Sheri voluntarily relinquished custody of her child, that she did not seek physical custody of Dawn even after obtaining legal custody in the divorce proceeding, that she failed to contribute any financial support to Dawn or include her in family vacations, and that she failed to establish any emotional stability or continuity for Dawn.
Jackie’s counsel conceded during oral argument that any issue of lack of notice or due process had been waived by failure to object during the trial.
The proper standard for determining custody of a minor child is the best interest of that child. La.C.C. art. 146. This is so even when the contestants for custody are not the parents but one parent and a grandparent.
A. If there are children of the marriage whose provisional custody is claimed by both husband and wife, the suit being yet pending and undecided, custody shall be awarded in the following order of preference, according to the best interest of the children:
[[Image here]]
(3) If to neither parent, to the person or persons in whose home the child has been living in a wholesome and stable environment.
[[Image here]]
B. Before the court makes any order awarding custody to a person or persons other than a parent without the consent of the parents, it shall make a finding that an award of custody to a parent would be detrimental to the child and the award to a nonparent is required to serve the best interest of the child
La.C.C. art. 149 (emphasis added). La.C.C. art. 157 applies the standards of La.C.C. art. 146 to “change of custody after an initial award” and to awards of permanent custody.
The application by the trial judge of a standard which requires proof of the mother’s unfitness or inability to parent was incorrect. The correct standard requires proof of (1) detriment to the child and (2) best interest of the child; and the unfitness standard outlined in Powell v. Barsavage, supra, and other cases has been legislatively overruled by La.C.C. art. 146. In re Bourg, 501 So.2d 862 (La.App. 5th Cir.1987); Parker v. Payton, 511 So.2d 868 (La.App. 4th Cir.1987); Recknagel v. Roberts, 465 So.2d 844 (La.App. 2d Cir. 1985), writ den. 468 So.2d 570 & 579 (La. 1985).
The only testimony with regard to either detriment or best interest was that of Dr. Cowardin; and her unrebutted conclusion was that it would be detrimental to Dawn and not in her best interest to take her away from the stable home Jackie, her psychological parent, had provided for her for nearly four years. Nevertheless, Dawn has now been with Sheri for almost a year; and the psychological damage and trauma envisioned by Dr. Cowardin have already been suffered. To make yet another change in Dawn’s custody would only serve to reimpose further trauma and psychological damage on this little girl, who is obviously loved by both Jackie and Sheri. For this reason, we believe the best interest of Dawn at this point requires her to remain with her mother, Sheri Lynn Worley; and we affirm the trial court’s judgment of custody and visitation.
AFFIRMED.