652 So.2d 593 (1995)
Bart E. BLACKLEDGE
v.
Karen Miley BLACKLEDGE.
No. 94 CA 1568.
Court of Appeal of Louisiana, First Circuit.
March 3, 1995.
*594 Alexis A. St. Amant, Baton Rouge, for plaintiff-appellant.
Carolyn Ott, Springs, for intervenors, Gene Denham and Dorothy Miley.
Helen M. Edgington, Baton Rouge, for defendant-appellee.
Before WATKINS and FOGG, JJ., and TANNER, J. Pro Tem.[1]
THOMAS W. TANNER, Judge Pro Tem.
In this custody dispute, the trial court awarded custody of the Blackledges' two minor children to intervenors, Gene and Dorothy Miley, the children's maternal grandparents. Bart Blackledge, the children's natural father, appeals.

Factual and Procedural Background
On June 27, 1989, Bart and Karen Blackledge obtained a divorce and entered into a joint custody arrangement for their two minor children. Karen was designated the primary domiciliary parent and Bart was granted reasonable visitation rights.
In December, 1990, the parties jointly sought a modification of the custody plan, to continue the joint custody, but to change the designation of primary domiciliary parent to Bart, with Karen being entitled to reasonable visitation. The court granted this modification.
In May, 1992, Bart Blackledge filed a motion to modify joint custody, seeking to limit Karen's visitation schedule, alleging that Karen's visitation had a "detrimental effect on the children."[2] In response to this motion, Karen filed a reconventional demand seeking a continuation of joint custody with a declaration that Karen would be the domiciliary parent, and in the alternative, that Karen be awarded sole custody.
In October, 1992, prior to the above two motions being set for hearing, Karen and her mother, Dorothy Miley, reported to the children's school that Corey, the Blackledges' eleven year old son, had told them he had been beaten with a belt by his father and the buckle had left bruises on his back and buttocks. An examination of Corey at the school revealed the alleged bruising, and Karen and her mother picked the children up from school and refused to return them to Bart's custody. Subsequently, Bart obtained a civil warrant for the return of the children and Karen filed a motion for temporary custody. Because the permanent custody motions *595 had already been fixed for hearing, the trial court denied Karen's motion for temporary custody and ordered the children returned to the custody of the father, with a specific prohibition against corporal punishment of any kind by Mr. Blackledge.
In December, 1992 and continuing through July, 1993, a "child custody evaluation" was conducted by Donald G. Hoppe, clinical psychologist, through a series of testing and clinical interviews performed on both children, Karen, Bart, Alicia Blackledge (Bart's wife and the children's stepmother) and George Bean (Karen's husband and the children's stepfather.) In addition, Dr. Hoppe interviewed Terry Preaux, the guidance counselor at the children's elementary school, Jackie Durrett, the children's social worker, Mr. and Mrs. Glenn Blackledge, the children's paternal grandparents, and Mr. and Mrs. Miley, the children's maternal grandparents. After completion of this evaluation, Dr. Hoppe recommended that temporary custody of the children be granted to Mr. and Mrs. Miley. Following this evaluation, in August, 1993, the Mileys filed a petition of intervention, seeking custody of the two children.
A trial was held on November 8 and 10, and December 21, 1993. The trial court granted the Mileys' petition, awarding them custody of the children based on its finding that an award of custody to either parent would be detrimental to the children and that is was in their best interest that custody be awarded to the maternal grandparents. Bart Blackledge appeals.

Applicable Law
It is correct, as asserted by Mr. Blackledge, that a parent has a paramount right to custody of his child. LSA-C.C. art. 131[3] which governs child custody provides in section A that the first preference of custody is to both parents jointly. However, section C specifies that the presumption that joint custody is in the best interest of a minor child is rebuttable, and section (B) sets forth a two-tiered standard which must be met before a natural parent can be denied custody of his or her child in favor of a nonparent as follows:
B. Before the court makes any order awarding custody to a person or persons other than a parent without the consent of the parents, it shall make a finding that [1] an award of custody to a parent would be detrimental to the child and [2] the award to a nonparent is required to serve the best interest of the child.
The statutory term "detrimental to the child" somewhat broadens the former jurisprudential rule which required an express finding that the parent was either unable or unfit to provide a home for the child or a finding that the parent forfeited his or her paramount parental rights before custody could be taken from the parent. The broader standard now includes other circumstances which would cause the child to suffer positive and substantial harm. See Merritt v. Merritt, 550 So.2d 882 (La.App. 2nd Cir.1989). Furthermore, an award of custody is not a tool to regulate human behavior. The best interest of the child is the sole criterion in an award or change in custody. Everett v. Everett, 433 So.2d 705, 708 (La.1983).

Application of Legal Precepts
Upon appellate review, the determination of the trial court regarding custody is entitled to great weight and overturned only when there is a clear abuse of discretion. Thompson v. Thompson, 532 So.2d 101 (La. 1988); Everett v. Everett, 433 So.2d 705 (La. 1983).
In awarding custody to the Mileys, the trial court stated:
The Court believes that neither parents' [sic] home is emotionally healthy at this time. Turmoil is more the norm than not with the children being placed in the mist [sic] of that unhealthy situation. The maternal grandparents offered a safe haven for the minors until the parents can mature.
Implicit in these reasons is the trial court's factual determination that custody with either *596 parent was detrimental to the children and that it was in the children's best interest to award custody to the grandparents. We have carefully reviewed the record and find that it amply supports the trial court's findings.
The record reveals a poignantly sad scenario of an acrimonious environment between divorced parents in which the children are primary victims. Sarah, the Blackledges' daughter, was admitted to Parkland Hospital in February, 1992, at the age of eight, after exhibiting out of control and sexually bizarre behavior at school. She was diagnosed with major depression, oppositional defiant disorder, overanxious disorder, and possible sexual abuse. However, Sarah was prematurely discharged from the hospital, against medical advice, at the insistence of her father. According to the discharge summary, she "was not allowed to stay long enough to really begin treatment of the basic problems." She continued in outpatient therapy with a social worker through the date of the trial and while some improvement resulted, the issue of potential sexual abuse had not been resolved, and she continued to exhibit overanxious behavior and an inability to concentrate. Sarah was described by Dr. Donald Hoppe, who performed the psychological evaluations as a person who "shows a significant degree of anxiety and insecurity, most of which appears to be the result of living in an unpredictable and chaotic environment." Corey, the Blackledges' son, who was eleven at the time of evaluation, was diagnosed with attention deficit disorder and exhibited related symptoms, particularly poor performance in school and behavioral problems. He had, in the past, experienced marked improvement when placed on the prescription drug Ritalin; however, the evidence reflected that his use of Ritalin has been inconsistent due to his parents' disagreement on his need to take the medication. Corey was described by Dr. Donald Hoppe as "a child who is extremely anxious, insecure and in great need of consistent attention and nurturing."
The evidence also reveals a clear pattern of animosity between Bart and Karen Blackledge. Both Bart and Karen accused each other of being the "bad parent" and attempted to prove that all of the children's problems were caused by such bad parenting. Karen admitted that joint custody between Bart and herself was unworkable. She testified that there was little to no communication between Bart and herself concerning the children, and that she and Bart disagreed regarding disciplining and caring for the children. Particularly with regard to disciplining the children, she testified that Bart physically abuses the children and that they fear him. She also testified that there were problems with visitation in that it was too restricted and she was not allowed to freely exercise telephone visitation. She admitted that while she was domiciliary parent, she and the children moved quite frequently.
Bart Blackledge, on the other hand, testified that he saw no problem with the joint custody arrangement and that he would like to remain the domiciliary parent. He stated that Karen started all the problems with the October, 1992 incident, when she took the children from school and refused to return them. He stated that he and Karen did communicate often about the children, but admitted that such communication was not good and that he and Karen disagreed on everything. He testified that things had been in "constant turmoil" since the couple's separation and admitted that this was negatively affecting the children.
The remaining evidence likewise reflects the hostility between Bart and Karen Blackledge as well as the resulting conflicts over the basic issues regarding the children's wellbeing. These conflicts are further compounded by the efforts of each parent to put the blame on the other for all of the children's problems. Through no fault of their own, the children are caught in the middle of a chaotic and unpredictable environment. All of the testimony and evidence supports the conclusion that the majority, if not all, of the children's problems stem from the discord between their parents as well as the irresponsible, immature and dysfunctional behaviors exhibited by their parents.
Based on the evidence presented, the trial court found that a custody award to either parent would be detrimental to the children and their best interests require an award of *597 custody to Mr. and Mrs. Miley, the grandparents. We agree with this conclusion; in any event, there is no abuse of discretion. The evidence clearly reflects that the Mileys have consistently been financially and emotionally supportive of the children. Furthermore, the children's counselors noted that the Mileys have a significant positive influence on the children and that the children have always spoken very fondly of their grandparents. The Mileys expressed a genuine concern for the welfare of these children, as well as a willingness to have custody of them if that were determined to be in the best interest of the children. Accordingly, we find no abuse of discretion in the trial court's choice to award custody to the intervenors, Gene and Dorothy Miley. For the foregoing reasons, the judgment of the trial court awarding custody of Corey and Sarah Blackledge to their maternal grandparents is affirmed. Bart Blackledge is assessed all costs of this appeal.
AFFIRMED.
NOTES
[1] Judge Thomas W. Tanner, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] The basis for this motion was an alleged incident, reported by the children to Bart, that during visitation with Karen, Karen's boyfriend (George Bean, who is now Karen's husband) had gotten drunk and was driving with the children in the car, and that the children had been frightened and wanted to return home.
[3] LSA-C.C. art 131 was amended and reenacted by Act 1993, No. 261 § 1; however, LSA-R.S. 9:387 provides that actions commenced before January 1, 1994 are to be governed by the law in effect at that time.