704 So.2d 872 (1997)
In the Matter of Alicia Louise LANDRUM.
No. 97-826.
Court of Appeal of Louisiana, Third Circuit.
December 10, 1997.
John B. Kleinpeter, Thibodaux, for Celeste Marie Day.
*873 Armand J. Brinkhaus, Sunset, Paul D. Dugas, Lafayette, for Terry Lee Landrum, et al.
Before DOUCET, C.J., and YELVERTON and SAUNDERS, JJ.
DOUCET, Chief Judge.
Celeste Landrum Day, the mother of the minor, Alicia Louise Landrum, appeals a judgment of the trial court terminating her sole custody of Alicia and granting joint custody of Alicia to Celeste and her father, Terry Lee Landrum, the grandfather of Alicia. In the alternative, Ms. Day appeals, as insufficient, the visitation allowed under the judgment. We affirm in part and remand.

HISTORY
Celeste Landrum, who was seventeen years old at the time, gave birth to Alicia Louise Landrum on February 6, 1993. Upon her release from the hospital, following Alicia's birth, Celeste and her infant daughter moved in with her father and step-mother, Terry Lee and Jacqueline Orgeron Landrum. Thereafter, by a judgment of the court, dated April 10, 1995, she voluntarily transferred the custody of Alicia to Terry and Jacqueline. Alicia's grandparents were her primary care givers with Celeste going and coming as she pleased. The record reflects that shortly after moving back into her father's house, Celeste abandoned the family home to live in, at least, two different out-of-town locations. Except for two very brief periods, Alicia was left behind, to be cared for by Terry and Jacqueline.
Celeste married Donnie Troy Day, March 16,1996, and on April 18,1996, the couple filed a rule to change custody of Alicia from the Landrums to the Days. At first the Landrums resisted, but, in the spirit of cooperation, they relented and a consent judgment, changing custody of Alicia to Celeste, was signed on July 31, 1996. The consent judgment provided for "reasonable visitation" by the Landrums.
Visitation and telephone contact with Alicia turned out to be a source of contention between the parties, with Terry and Jacqueline being denied contact or visits on a number of occasions. Also, the Landrums subsequently learned that, since the change of custody, a child had been killed in the Day residence and that Alicia had been allowed to visit over night in the home of a known child molester. As a consequence, the Landrums filed a rule for contempt and change of custody on January 27, 1997. Prior to the hearing on the Landrums' rule, by order of the court, a mental health examination of all parties was conducted by Dr. David A. Legendre. Dr. Legendre concluded that the prior custody arrangement (sole custody vested in Celeste with the Landrums having liberal visitation) was "marginally successful at best." He opined that Alicia was being used as a pawn by Celeste in an unresolved past, problem relationship with her father. He further found that the child had been either coerced or coached by the Days in an effort to control the outcome of the evaluations. As to the Landrums, he noted that Alicia had spent the majority of her life in their care, that they "provided a stable, adequate environment for Alicia" and that, given a choice, Alicia would rather live with the Landrums in Cankton.
Dr. Legendre recommended that custody be returned to the Landrums. He concluded that vesting custody in the Landrums was in the present and future best interest of Alicia and that removal of the child from the Landrums' custody had resulted in emotional harm to the child. Dr. Legendre stated that, in his opinion, coparenting by the two couples would be ideal, and that the couples would be well advised to attend coparenting classes at the Family Tree in Lafayette or some other equally qualified provider. He encouraged a liberal visitation schedule.
The hearing on the rule was held February 21, 1997. Dr. Legendre's report was placed into evidence and testimony was elicited from Celeste Landrum Day, Troy Day, Terry Landrum, Jacqueline Landrum and Gloria Malbrough, an elementary teacher employed at Cankton Elementary with twenty-seven years of experience.
At the conclusion of the hearing the trial judge took the case under advisement and on March 20, 1997, he issued written reasons awarding joint custody of Alicia to Celeste Landrum Day and Terry Landrum, with Terry Landrum being domiciliary custodian and *874 ordering the parties to confect a joint custody plan. In due time that plan was confected and on April 14, 1997, the trial judge signed the judgment awarding joint custody and implementing the joint custody plan. It is from that judgment that Celeste Landrum Day now appeals alleging the Landrums failed to meet their burden of proof under La.Civ.Code art. 133; that the trial court erred in awarding custody to a grandparent over a parent; and that the trial court awarded insufficient visitation rights to appellant.

LAW AND DISCUSSION
The linchpin of this case involves the interpretation of La.Civ.Code art. 133 which states as follows:

If an award of joint custody or of sole custody to either parent would result in substantial harm to the child, the court shall award custody to another person with whom the child has been living in a wholesome and stable environment, or otherwise to any other person able to provide an adequate and stable environment. [emphasis ours]
In researching the case before us we found a number of cases which involved custody disputes between a child's parent and his/her grandparent(s). However, we have only been able to find four cases in the past thirteen years in which joint custody was awarded to a parent and a grandparent: Merritt v. Merritt, 550 So.2d 882 (La.App. 2 Cir.1989), Schloegel v. Schloegel, 584 So.2d 344 (La.App. 4 Cir.1991), Rupert v. Swinford, 95-0395 (La.App. 1 Cir. 10/6/95), 671 So.2d 502 and Robert v. Gaudet, 96-2506 (La.App. 1 Cir. 3/27/97), 691 So.2d 780. In that Rupert and Robert post-date the changes to La.Civ.Code arts 131 through 136, which deal with child custody, we place more reliance on the later cases. In Robert our brethren of the first circuit stated:
Parents have a paramount right of custody. They may be divested of that right only for compelling reasons shown by clear and convincing evidence. Rupert v. Swinford, 95-0395, p. 4 (La.App. 1st Cir. 10/6/95), 671 So.2d 502, 505; In re Custody of Landry, 95-0141, p. 5 (La.App. 1st Cir. 10/6/95), 662 So.2d 169, 172. If a prior award of custody has been made by consent decree, the proponent for change must show that a material change in circumstances affecting the child's welfare has occurred since the last custody judgment before the court will consider a change in custody. Bergeron v. Bergeron, 492 So.2d 1193, 1200 (La.1986); Millet v. Andrasko, 93-0520, p. 5-6 (La.App. 1st Cir. 3/11/94), 640 So.2d 368, 370-71. If a nonparent has been awarded custody, the parent moving for a change or modification must show a change in circumstances and that the change in custody would be in the best interest of the child. Millet, 93-0520, at p. 5-6, 640 So.2d at 371. However, if a nonparent moves for a change in parental custody, the Bergeron rule does not provide the standard for divestiture. The legislature has provided that standard or test in Civil Code article 133.
Thus, when a nonparent seeks to divest a parent of custody, the nonparent bears the burden of proof to show that parental custody "would result in substantial harm to the child." La. C.C. art. 133; Rupert v. Swinford, 95-0395, at p. 4 & 9, 671 So.2d at 505 & 507-508. The words "substantial harm" carry no magical connotation. "Detrimental" and "substantial harm" have been used interchangeably in the jurisprudence. See Matter of Tuccio, 95-0302, p. 6 (La.App. 1st Cir. 11/16/95), 665 So.2d 531, 534; Matter of Stewart, 602 So.2d 212, 214 (La.App. 3d Cir.1992); Pittman v. Jones, 559 So.2d 990, 993 (La.App. 4th Cir.), writ denied, 565 So.2d 451 (La.1990).
To divest a parent of custody based only on a finding of material change of circumstances and that an award to a nonparent was in the best interest of the child, would circumvent the paramount right of the parent to the child. The correct procedure for a divestiture, or a substantive modification of parental custody, is a threshold determination that a material change affecting the child's welfare has occurred. If the trial court finds in the affirmative, the court follows with a determination of whether continued parental custody would result in substantial harm to the child. *875 See Rupert v. Swinford, 95-0395, at p. 3-4, 671 So.2d at 505.
To do otherwise would create a trap for the unwary. Nonparents would be relieved of the burden imposed by Civil Code article 133 in all future parent-nonparent disputes after the initial award of custody to the parents by consent decree. Article 133 would be eviscerated.
However, the best interest consideration is still applicable to the award of custody to a nonparent through present day Civil Code article 131. Article 131 requires the court to award "custody of a child in accordance with the best interest of the child." The best interest consideration applies to all custody awards. See La. C.C. art. 131, comment (a) & (d). If divestiture or modification of parental custody is warranted under the article 133 test, custody is awarded in the best interest of the child in the following order of preference: to "another person with whom the child has been living in a wholesome and stable environment, or otherwise to any other person able to provide an adequate and stable environment." La. C.C. arts. 133 & 131.
Upon appellate review, the determination of the trial court on custody is entitled to great weight. It will be overturned only when the trial court clearly abused its discretion. Blackledge v. Blackledge, 94-1568, p. 4 (La.App. 1st Cir. 3/3/95), 652 So.2d 593, 595.
Id. at 783-84.
While, for the most part, we agree with the analysis of our brethren in Robert, we note that the case sub judice is distinguishable. In Robert the trial court divested the parent of custody, awarding sole custody to the grandparents. Thus, at the trial court level, the grandparents' burden of proof was established by La.Civ.Code art. 133. Robert, also appears to be a shift in the thinking of the first circuit in regards to La.Civ.Code art. 133. In Rupert, 671 So.2d at 505 the court stated the following:
Under LSA-C.C. art. 133, a ... court could determine that joint custody between the parent and non-parent would not result in substantial harm to the child and name as the domiciliary custodian another person with whom the child has been living in a wholesome and stable environment or any other person able to provide an adequate and stable environment, giving the parent visitation. Schloegel v. Schloegel, 584 So.2d 344 (La.App. 4th Cir.1991); see also Revision Comments  1993 to LSA-C.C. art. 133, section (c).
The father next contends that the trial court erred by failing to state in its reasons for judgment that sole custody to the father would result in substantial harm to Derrick. Unlike prior civil code articles governing custody awards to non-parents, LSA-C.C. art. 133 does not require an express finding that sole custody to a parent would cause substantial harm to the child.
However, we note that Article 133 states, "If an award of joint custody... to either parent would result in substantial harm to the child, [then] the court shall award custody to another person...." In this case the court did award joint custody to the mother. Hence, we find the burden of proving "substantial harm to the child" inapplicable. To that extent we disagree with Robert.
In the case sub judice, joint custody was awarded to appellant. Hence her argument that appellees failed to meet their burden under Article 131 is misplaced[1]. What the trial court's judgment did was to change the terms of Celeste's custody, not take custody away from her. Changes in custody arrangements are governed by La. Civ.Code arts. 131 and 134. Article 131 tells us that "the best interest of the child" is the paramount consideration in awarding custody; and Article 134 lists relevant factors the court should consider in determining just what is in the best interest of the child. Our jurisprudence tells us the following:
Where a consent decree is at issue, the burden of proof is on the party moving for modification to show a material change in *876 circumstances affecting the welfare of the children since the original decree and that the proposed change is in the best interest of the children. Hensgens v. Hensgens, 94-1200 (La.App. 3 Cir. 3/15/95); 653 So.2d 48, writ denied, 95-1488 (La.9/22/95); 660 So.2d 478.
Page v. Page, 96-69, p. 2 (La.App. 3 Cir. 5/8/96), 673 So.2d 1317, 1319.
The record shows that after Alicia went to live with the Days in Thibodeaux she suffered emotional distress. The record further shows that Celeste was uncooperative with the Landrums in visitation and phone contact with Alicia. It was also established that after Alicia's move to Thibodeaux, a fourteen-year-old boy, with whom Alicia was acquainted, was shot and killed in the Days' home while under the supervision of Troy Day and that Alicia had been allowed to visit, overnight, in a relative's home in which a known child molester (Celeste's stepfather) resided. The trial judge considered all of these factors and additionally noted that:
Civil Code Article 134 provides the court with a list of twelve factors that can be considered in determining the best interest of the child. Factor twelve is a new factor and it states that the court can look at "The responsibility for the care and rearing of the child previously exercised by each party."
The record established that for approximately three and one-half of Alicia's four years her care and rearing were left to the Landrums. Testimony established that even during the time Celeste was living in the Landrum home, both, immediately following the birth of Alicia and on brief stays, after she once again left the family home, Celeste left most of Alicia's care to Jacqueline.
After carefully considering all the facts in this case, we cannot say that the trial judge was clearly wrong in awarding joint custody to Terry Landrum and Celeste Day with Mr. Landrum as domiciliary custodian. Further, we cannot say the visitation schedule is insufficient, at the present time. The schedule is not inflexible and does not prohibit increased visitation (at the mutual consent of both parties) should the situation warrant it. In considering the change in the visitation schedule Celeste suggested in brief, moving "exchange time" of Alicia from noon to 5:00 P.M., we note that the record contains insufficient evidence for us to consider the matter at this time. Hence, for this limited purpose, i.e., changing Alicia's exchange times, we remand the matter to the trial court.
Accordingly, for the reasons stated above, the judgment of the trial court is affirmed, except for the matter of exchange times which we remand to the trial court for hearing and consideration. All costs of this appeal are taxed equally against appellant, Celeste Day and appellee, Terry Landrum.
AFFIRMED IN PART AND REMANDED.
NOTES
[1] Even if La.Civ.Code art. 133 is applicable, we find the Landrums carried their burden of proof and showed that if domiciliary custody of Alicia was to remain with Celeste, it would result in substantial harm to Alicia.