# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## CA 06-33


**DONALD W. CUTTS, ET UX.**

**VERSUS**

**JEFFREY CUTTS, ET AL.**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 212,355
HONORABLE GEORGE CLARENCE METOYER JR., DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## JOHN D. SAUNDERS
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Glenn B. Gremillion, and Elizabeth A. Pickett, Judges.


**Picket, J., dissents and assigns written reasons.**

**AFFIRMED.**

**Richard E. Lee**
**Attorney at Law**
**810 Main St.**
**Pineville, LA 71360**
**(318) 448-1391**
**Counsel for Defendant/Appellee:**
**Jeffrey Cutts**
**Karee Feazell Cutts**

**Randal Bryan Tannehill**
**Tannehill & Sylvester**
**2900 Military Hwy.**
**Pineville, LA 71360**
**(318) 641-1550**
**Counsel for Plaintiff/Appellant:**
**Donald W. Cutts**
**Gwendolyn Gail Cutts**

**SAUNDERS, Judge.**

Paternal grandparents were awarded custody of a minor child pursuant to a consent judgment. The child's biological mother requested that the child be returned to her custody. The grandparents refused and the mother filed a rule to change custody. The trial court awarded custody to the child's mother. This appeal followed. We affirm.

## FACTS AND PROCEDURAL HISTORY

On March, 11, 2003, Donald and Gwendolyn Cutts filed a petition for custody of their granddaughter, Kaitlin Marie Cutts. Kaitlin was born on August 5, 1997 and had been living with her grandparents for approximately three years. Jeffery Wayne Cutts and Karee Feazell Cutts, the biological parents of Kaitlin, were the named defendants. On March 20, 2003, Karee and her father met with the attorney for appellants and signed an acceptance of service and waiver of citation. A consent judgment was signed granting Donald and Gwendolyn Cutts custody of Kaitlin. Ms. Feazell was allegedly informed that by so doing it would be easier to regain custody of her child at a later time.

Subsequently, on July 25, 2005, Ms. Feazell's attorney wrote to appellants informing them that Karee wished to revoke her voluntary transfer of custody. Appellants refused to return the child. Karee then filed a rule to change custody of Kaitlin. After a hearing on the rule, the trial court concluded that the previous consent judgment was a voluntary transfer of custody pursuant to which Ms. Feazell could request that Kaitlin be returned to her. This appeal followed.

## ASSIGNMENT OF ERROR

1)  The trial court committed manifest error when it determined that the previous consent judgment transferring custody of the minor to her paternal grandparents was a voluntary transfer of custody which could simply be withdrawn by the natural mother without a showing that there

has been a material change in circumstances since the custody decree was rendered and whether a change in custody is in the best interests of the minor child.

**STANDARD OF REVIEW**

Findings of the trial court are reviewable on appeal, and the appellate standard of review has been clearly established. A trial judge's findings of fact will not be disturbed unless they are manifestly erroneous or clearly wrong. *Stobart v. State, through Dep't of Transp. & Dev.,* 617 So.2d 880 (La.1993). "Absent 'manifest error' or unless it is 'clearly wrong,' the jury or trial court's findings of fact may not be disturbed on appeal." *Sistler v. Liberty Mut. Ins. Co.,* 558 So.2d 1106, 1111 (La. 1990). "If the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.* at 1112.

**DISCUSSION**

Appellants argue that the previous consent judgment is not a voluntary transfer of custody which allows the natural mother to revoke the transfer as provided for in La.Ch.Code art. 1523. They contend that the judgment should be treated as any other non-considered custody decree. As such, a showing that there has been a material change in circumstances and a change in the custody regime of the child would be in its best interests must be made to alter the regime. Because, appellants argue, appellees did not make this showing, the trial court's judgment must be reversed. We disagree.

Appellants point to a previous case from this court wherein we held that a parent must show a material change in circumstances and that a change of custody is

2

in the best interests of the child to regain custody from a non-parent custodian awarded custody by a consent judgment. *Mayeaux v. Mayeaux*, 93-1603 (La.App. 3 Cir. 6/1/94), 640 So.2d 686. In *Mayeaux*, however, we noted that the law governing situations like the one presently before us was unclear. *Id*. Accordingly, we examined jurisprudence from other circuits and relied upon the second circuit's reasoning in *Hill v. Hill*, 602 So.2d 287 (La.App. 2 Cir. 1992) in reaching our decision. Those cases arose, however, before the most recent revisions to the codal articles regarding custody became effective. Those revisions removed all other considerations and focused custody awards solely on the basis of the best interests of the child.

Following the revisions, the second circuit was presented with a factual scenario similar to that present in *Hill*, *Mayeaux*, and the case sub judice. *Tennessee v. Campbell*, 28,823 (La.App. 2 Cir. 10/30/96), 682 So.2d 1274. In that case, the court examined prior jurisprudence in light of the revisions to child custody laws. *Id*. The court stated that:

> In the past, the law has been unclear as to who bears the burden of proof and what proof is necessary at a subsequent hearing by a parent against a nonparent to modify a "nonconsidered" custody decree, and the lack of clarity has caused this court difficulty. Compare *Hill v. Hill,* 602 So.2d 287 (La.App. 2d Cir.1992), and *Hughes v. McKenzie, supra.* However, we note that our prior decisions were made before the most recent revisions to the Civil Code's child custody articles under which this appeal is decided. Article 131 now simply provides that the court shall award custody in accordance with "the best interest of the child"; this standard is the basic principle governing Articles 131 through 136. See Revision Comment (a) to Article 131. The articles that follow Article 131 are adaptations of the basic principle to specific circumstances relating to custody disputes, much as the articles following Article 2315 apply its basic tort principle to particular situations. Article 132 provides for application of the

"best interest of the child" standard in determining an award of custody as between the parents; Article 133 applies this same standard in reconciling custody disputes between parents and nonparents.

Article 133 states:
If an award of joint custody or of sole custody to either parent would result in substantial harm to the child, the court shall award custody to another person with whom the child has been living in a wholesome and stable environment, or otherwise to any other person able to provide an adequate and stable environment.

In addition, Revision Comment (b) to Article 133 recognizes the parent's paramount right to custody of his child as against any nonparent, stating:[I]t is clear that the heart of the parental primacy concept, the rule that a nonparent always bears the burden of proof in a custody contest with a parent, ... has not been affected by this revision.

The article and comment implicitly show that the best interest of the child often is best served by parental custody, even when the child has been in a "wholesome and stable environment" with a nonparent. Thus, proof of "substantial harm" is needed to show otherwise.

The importance of a parent's right to custody of the child is not a new idea in Louisiana jurisprudence. In his concurring opinion in *State v. Peniston,* 235 La. 579, 105 So.2d 228 (1958), the late Justice Tate recognized this most important right:

> The right of a parent to his child existed before governments or other social institutions of mankind. This natural right proceeds from our Creator and exists independently of the state; the state ... does not in my humble opinion possess the power to take away in favor of a stranger the God-given right of a parent to his child, in the absence of the parent's forfeiture or abandonment of such right or of positive detriment to the child.

*Id.* 105 So.2d at 232.

Indeed, the parent's right to custody of the child is based

upon our society's recognition of the special bond between the child and parent as a cornerstone of the continuing institution of the American family. Therefore, this concept of parental primacy and "the best interest of the child" standard are in essence two sides of the same coin: the same reasons supporting parental primacy also underlie the idea that the best interest of the child will be served by parental custody.

In recognizing these principles, we note that Article 134 provides factors for the court to consider in determining the best interest of the child. However, the Revision Comments to this article point out that these factors are illustrative, and not exclusive. Certainly the special considerations of the parent/nonparent custody dispute will not be properly weighed by looking only to the factors enumerated in Article 134, which were designed to aid in determining the best interest of the child primarily in disputes between two parents.

We therefore conclude that in determining the best interest of the child, the nonparent bears the burden of proof in an action to change custody awarded by a "nonconsidered" decree, and must show that an award of custody to the parent would result in substantial harm to the child.

*Id*. at 1278-79. We find this reasoning compelling.

In *LaPointe v. Menard*, 412 So.2d 223 (La.App. 3 Cir. 1982), we, like our brethren in the second circuit, adopted Justice Tate's eloquent concurrence in *State ex rel. Paul v. Peniston*, 105 So.2d 228 (La. 1958). Like the second circuit, we are bound by the revisions to the civil code articles regarding child custody. Given these considerations, we hold that a parent does not have to show a material change in circumstances and that a change is in the best interests of a child when disputing custody with a non-parent. Rather, the non-parent must show that an award of custody to the parent will result in substantial harm to the child. Accordingly, it is immaterial whether or not the consent judgment in this matter is deemed a voluntary transfer of custody because, in either case, the burden in a custody dispute between

5

a parent and non-parent does not rest with the parent. This must be the case if we are to view parental primacy as a primary factor in determining the best interests of a child as set forth in Justice Tate's watershed concurrence in *State ex rel. Paul v. Peniston*, 105 So.2d 228 (La. 1958). Ms. Feazell, therefore, did not fail to meet her burden and the record is void of any evidence indicating that Kaitlin's best interests would not be served by returning her to her mother. Rather, Ms. Feazell, unlike before, is now in the financial position to provide a stable home for her and her daughter. Accordingly, we find no merit in appellants assignment of error.

**CONCLUSION**

The judgment of the trial court is affirmed. Costs of this appeal are assessed against appellants.

**AFFIRMED.**

DONALD W. CUTTS, ET UX.

VERSUS

JEFFREY WAYNE CUTTS, ET AL.

**Pickett, Judge, dissenting.**

This is a custody dispute between the paternal grandparents and the mother of an eight-year-old child. The paternal grandparents, Donald and Gwendolyn Cutts, have had custody of the child since she was two. In 2003, they filed a Petition for Custody against the mother, Karee Feazell Cutts, and the father, Jeffrey Cutts, who were divorced. Both parents waived appearances and acquiesced to the request by Donald and Gwendolyn. On April 7, 2003, Karee, Jeffrey, Donald and Gwendolyn, as well as the presiding judge, filed a Consent Judgment which awarded Donald and Gwendolyn sole custody of the child subject to reasonable visitation by Karee and Jeffrey.

On August 1, 2005, Karee filed a Rule for Change of Custody seeking revocation of the consent judgment and a judgment awarding custody to her. Following a hearing, the trial court found that the Consent Judgment constituted a voluntary transfer pursuant to La.Ch.Code art. 1510 et seq. Thus, the trial court held that the Karee revoked the voluntary transfer by filing the Rule for Change of Custody, and awarded custody to Karee without any determination of the best interests of the child. The grandparents have appealed.

1

The majority proposes to affirm the trial court. It decides that is unnecessary to determine if the original Consent Judgment is a voluntary transfer of custody or a non-considered decree. It finds that in either case, the grandparents bear the burden of proving that returning the child to Karee would cause substantial harm to the child, and that Karee does not bear the burden of proving that a change of custody is in the bests interests of the child. Finding the record devoid of evidence that Karee would do substantial harm to the child, the majority proposes to affirm.

The question becomes whether the consent judgment should be treated as a voluntary transfer. I have concluded that the answer is unequivocally no. The Children's Code defines "voluntary transfer of custody" in article 1511(4) as follows:

> "Voluntary transfer of custody" is a parent's knowing and voluntary relinquishment of legal custody or guardianship to an agency, institution, or individual, subject to residual parental rights retained by the parent and under such terms and conditions that enable the child to receive adequate care and treatment.

Articles 1513 through 1519 explain the procedure to be used in effecting a voluntary transfer. Importantly for this case, article 1515 very specifically sets forth the form of the petition, and article 1516 requires that the individuals accepting custody execute an affidavit indicating that they accept any conditions upon which the transfer of custody is conditioned. Neither form was executed in this matter. The comments indicate that the purpose of these specific forms of pleading is to minimize later disputes. Furthermore, article 1520 is very specific as to the form of the judgment granting a voluntary transfer:

> A. The court shall render a written judgment granting or denying the transfer of custody.

> B. If the court grants the transfer of custody, the judgment shall recite that:

> > (1) All necessary parties are involved.

2

(2) The transfer is knowing and voluntary.

(3) There is a legitimate purpose and a factual basis to support that purpose.

(4) All parties have been advised of and understand the nature and extent of the transfer, including any terms and conditions, and of their respective rights.

(5) The proposed change of custody is in the best interests of the child.

C. In addition, if the order grants the transfer of custody, the judgment shall order the transfer of custody and recite such terms and conditions as requested by the parties.

Even assuming, *arguendo*, that this could be construed as a voluntary transfer of custody, La.Ch.Code art. 1523 clearly states that if the custodians fail to return the child upon revocation of the voluntary transfer, there shall be a contradictory hearing at which the bests interests of the child are determined.

Since there is no voluntary transfer, the consent judgment is properly considered a non-considered decree, and should be analyzed under the provisions of La.Civ.Code art. 133. I would remand for a hearing to determine the best interests of the child. For these reasons, I respectfully dissent.

3