# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

# CA 15-939


**JEREMY GEORGE, ET UX.**

**VERSUS**

**ROBBIE DUGAS, ET UX.**



**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, NO. 2013-10752
HONORABLE CHARLES G. FITZGERALD, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

# BILLY HOWARD EZELL
# JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and Billy Howard Ezell, Judges.



**AFFIRMED IN PART; REVERSED IN PART; RENDERED AND REMANDED.**

**Roshell Jones**
**405 W. Main Street Suite 107**
**Lafayette, LA 70501**
**(337) 504-3437**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
    **Summer George**
    **Jeremy George**

**Bryan Dugas**
**Robbie Dugas**
**In Proper Person**
**427 Broussard Street**
**Breaux Bridge, LA 70517**
**(337) 344-8843**
**DEFENDANTS/APPELLANTS**

**EZELL, Judge.**

This case is a custody dispute between biological parents and the non-parent custodians of their children. Robbie and Bryan Dugas appeal the decision of the trial court below granting Summer and Jeremy George custody of their biological children, David, Joseph, and Tristan George. For the following reasons, we hereby affirm the decision of the trial court in part, reverse in part, render judgment, and remand for further proceedings.

On November 24, 2010, instanter orders were issued for the George children, placing them in the custody of the State of Louisiana. After a continued custody hearing, it was determined that the Georges were not able to care for their children due to abuse of illicit drugs. The couple had a criminal history involving drugs and domestic abuse. As no appropriate relatives were available at that time, the children were placed in the home of Robbie and Bryan Dugas.[1] On January 24, 2011, the children were adjudicated children in need of care and a case plan was established. After the Georges failed to comply with that case plan, a petition for termination of their parental rights was filed by the Department of Children and Family Services on January 26, 2012. The Dugases filed a petition for custody on May 4 of that year, asserting that the Georges consented to them being granted custody. The Department of Children and Family Services filed a petition to dismiss their petition to terminate, and the Dugases were granted custody by judgment signed July 10, 2012.

---

[1]The Georges had previously voluntarily transferred custody of the two oldest children to their paternal grandmother in 2006, asserting that the transfer of the children was in the best interests of the children. However, at some point, the children went back to their parents, though without any formal revocation or modification of the custody transfer.

In May of 2013, the Georges filed a petition for custody of the children in the juvenile court where the Child in Need of Care proceedings had occurred, alleging they had rehabilitated their drug problem and obtained stable housing and employment. On July 26, 2013, the Georges filed another petition for custody in the civil district court, as the juvenile court relinquished jurisdiction after a hearing on July 15, 2013. In response, the Dugases filed a lis pendens exception, which the trial court judge denied. After a hearing on the custody of the children, the trial court ruled that, as non-parents, the burden of proof in the matter was on the Dugases to establish that the children would suffer substantial harm if they were returned to their parents, rather than finding that the Georges, who moved for the change in custody, bore the burden of proving that there was a material change in circumstances. Finding a lack of proof of substantial harm, the trial court awarded custody of the children to the Georges'. From that decision, the Dugases appeal.

The Dugases assert five assignment of error on appeal. They claim that the trial court erred in terminating a guardianship judgment from a juvenile court without subject matter jurisdiction; that the trial court erred in failing to grant their exception of lis pendens; that the trial court erred in removing the children from their home twelve days prior to trial; that the trial court applied an incorrect burden of proof in requiring them to show substantial harm would befall the children if returned to the Georges; and that the trial court erred in following this court's decision in *Cutts v. Cutts*, 06-33 (La.App. 3 Cir. 5/24/06), 931 So.2d 467. To be as concise as possible, we will address these assignments of error somewhat out of order.

2

*Subject Matter Jurisdiction and Lis Pendens*

The Dugases' first two assignments of error allege that the trial court did not have subject matter jurisdiction over this matter, as jurisdiction should have been retained by the juvenile court, and that the trial court erred in failing to grant their exception of lis pendens. We disagree. Because their arguments on these assignments of error intertwine, we will address them together.

At the outset of our analysis, we must first address the initial judgment awarding custody of the children to the Dugases. The Dugases argue in brief that the judgment was a judgment of guardianship and that the juvenile court should have retained jurisdiction over that guardianship. However, as noted by the trial court in its lengthy oral reasons, the initial custody judgment simply does not conform with the requirements of a guardianship judgment. The petition filed was not a motion for guardianship under La.Ch.Code art. 720, but rather, purely a "Petition for Custody." At no point in the petition did the Dugases pray for, or even mention, guardianship of the children. The Dugases were specifically granted custody of the children, as they prayed for. The judgment granting the Dugases custody was unequivocally a custody judgment, and their assertion that they were granted guardianship of the children is clearly incorrect.

In 2012, after the Georges failed to comply with their case plan for a year, the State of Louisiana initiated termination of parental rights proceedings in Acadia Parish juvenile court. On July 10, 2012, judgment on the Dugases' petition for custody of the children was signed. The judgment also read: "IT IS ORDERED that the Child in Need of Care proceedings are terminated and that the Department of Children and Family Services is released from supervision in this matter." On May 28, 2013, the Georges filed a petition for custody in the juvenile court of

3

Acadia Parish. Apparently, there was a hearing at the juvenile court on July 15, 2013. The Georges' submissions contain a judgment from that hearing, signed on August 7, 2013, which ordered the Georges to submit to a hair follicle drug screening, allowed the biological parents supervised visitation beginning July 17, 2013[2], allowed for unsupervised visitation to begin immediately upon receipt of the negative drug screen, limited the unsupervised visitation to St. Martin and/or Lafayette Parishes, and most importantly, included the following sentence: "**the Court hereby relinquishes juvenile jurisdiction of this matter**" (emphasis ours).

On July 26, 2013, the Georges filed their petition for custody in the civil district court, as the juvenile court had relinquished jurisdiction. In response, the Dugases filed a lis pendens exception, on which there was a hearing on August 14, 2013. The trial court judge denied their lis pendens exception because, per the July 15, 2013 judgment, the juvenile court had relinquished jurisdiction. Thus, at the time of the hearing on the lis pendens exception, there was nothing pending in the juvenile court.

It is clear from a review of the record that the trial court had subject matter jurisdiction over this matter. When the Dugases were awarded custody, the Child in Need of Care proceedings were terminated and that the Department of Children and Family Services was released from involvement in the case. Likewise, the juvenile court clearly relinquished jurisdiction in this custody dispute. The trial court below was the proper court to hear this custody dispute and had proper subject matter jurisdiction. The Dugases' assertion otherwise lacks merit.

---

[2]The beginning date of the supervised visitation indicates that the juvenile court issued its orders prior to said order being actually signed.

Furthermore, the standard of review in the lis pendens context is whether the trial court abused its sound discretion. *See Rivers v. Bo Ezernack Hauling Contractor, LLC*, 09-1495 (La.App. 3 Cir. 5/5/10), 37 So.3d 1088. We find that the trial court did not abuse its discretion in denying the lis pendens exception because, at the time of the hearing on the Dugases' exception of lis pendens, there was nothing pending in the juvenile court, as the juvenile court had relinquished jurisdiction over this matter. Therefore, the trial court did not err by denying the Dugases' exception.

*Burden of Proof*

The Dugases' fourth and fifth assignments of error also overlap greatly and will likewise be addressed together. They claim that the trial court erred in following *Cutts*, 931 So.2d 467, and applying the substantial harm burden of proof to them, rather than requiring the Georges to show a material change in circumstances. We agree.

To properly address this issue, we must further establish what kind of decree the initial custody judgment awarding of the children to the Dugases was. Again, we reiterate that the trial court was correct in its determination that a legal guardianship of the children was never created. The Dugases filed only for custody of the children, and their petition for custody was granted as a custody decree only. At no point was the legal framework of a guardianship established.

Moreover, the trial court was also correct in finding that the judgment granting the Dugases custody was a consent decree, rather than a considered decree. There is no evidence in the record that a hearing or trial was held on the initial custody petition. In fact, the only mention of the manner in which the initial custody award to the Dugases was granted was a hearing officer report which

specifically noted that no hearing was held on the matter and that the placement was by agreement of the Dugases and Georges. This is completely supported by the Dugases' very own petition for custody, which directly states that both the Georges were "in favor of the Court awarding custody of the minor children to the [Dugases]." Thus, the evidence before this court clearly shows that the initial judgment awarding custody of the children to the Dugases was a consent decree. Having determined that, we may now properly determine the burden of proof to be applied, and to which party that burden falls.

It is well settled that, while each custody case must be viewed in light of its own specific set of facts and circumstances, the principal consideration in any determination of child custody is the best interest of the child. *Lehr v. Robertson*, 463 U.S. 248, 103 S.Ct. 2985 (1983); *McCormic v. Rider*, 09-2584, (La. 2/12/10), 27 So.3d 277; La.Civ.Code art. 134. "The best interest principle recognizes the child's substantive right to the custodianship that best promotes his welfare. The protection of the child's substantive right is paramount even when the contestants for the child's custody are not the parents[.]" *Tracie F. v. Francisco D.*, 15-224, p. 20 (La.App. 5 Cir. 9/21/15), 174 So.3d 781, 794, *writ granted*, 15-1812 (La. 11/16/15), ___So.3d___.[3]

> Today, child custody in Louisiana is controlled by Louisiana Civil Code articles 131 to 136. The best interest of the child is the overriding test applied in all child custody determinations. La.C.C. art. 131; *Ramirez v. Ramirez*, 13-166 (La.App. 5 Cir. 8/27/13), 124 So.3d 8, 17-18, (citing *McCormic v. Rider*, 09-2584, pp.3-4 (La. 2/12/10), 27 So.3d 277, 279 (citing *Evans v. Lungrin*, 97-0541, 97-0577 (La. 2/6/98), 708 So.2d 731)). While Louisiana law is settled in both initial custody contests between a nonparent and a parent, and in a parent's action to modify a considered decree awarding custody to a

---

[3]The court in *Tracie*, 174 So.3d 781, above quoted language as a quote from *Onderdonk v. Onderdonk*, 547 So.2d 1138 (La.App. 5 Cir. 1989). However, the language is not found in the *Onderdonk* opinion.

nonparent, the law is unsettled among, and perhaps, within, the Louisiana circuits as to both the burden and standard of proof in a parent's action to modify a previous consent judgment awarding custody to a nonparent.

*Id.* at 797-98.

This court has embodied the uncertainty on the issue of the burden and standard of proof in a parent's action to modify a prior consent judgment awarding custody to a nonparent, as we have issued seemingly conflicting decisions on the issue. A good summary of this court's developing jurisprudence is found in *Tracie F.*, 174 So.3d. at 801-02 (footnote omitted)(second alteration in original):

> In *Mayeux v. Mayeux*, 93-1603 (La. App. 3 Cir. 6/1/94), 640 So.2d 686, the Third Circuit had held that in these circumstances a parent seeking to regain custody from a nonparent bore the burden of proof and must show a material change in circumstances and that a change of custody would be in the best interests of the child. However, in 2006, in *Cutts v. Cutts*, *supra*, the Third Circuit, with Judge Pickett dissenting, specifically followed the Second Circuit's decision in *Tennessee v. Campbell*, *supra*, rejected its earlier enunciated standard governing these situations, and announce[d] a new standard and burden.
>
> > We conclude that in determining the best interest of the child, the nonparent bears the burden of proof in an action to change custody awarded by a ''nonconsidered'' decree, and must show that an award of custody to the parent would result in substantial harm to the child.
>
> Borrowing the Second Circuit's *Tennessee v. Campbell* language and logic, the court focused on the parental primacy principle. The court also referred to La. C.C. art. 133's limiting language, which permits nonparent custody only when custody to a parent would result in substantial harm to the child, emphasizing that despite authorizing custody awards to nonparents, the Article 133 revision comments recognize the parent's paramount right to custody over any nonparent. Relying upon Article 133 Comment (b), the Third Circuit opined that the best interest of the child is often served by parental custody, even when the child has been in a wholesome and stable environment with a nonparent, and proof of substantial harm is needed to show otherwise. *Cutts*, 931 So.2d at 470 (quoting *Tennessee v. Campbell*, *supra*.). The Third Circuit found that because a parent's right to custody of his child is a ''cornerstone of the continuing institution of the American family,'' the nonparent should bear the burden of proof in an action to change custody awarded by

7

consent decree and must show that an award of custody to the parent would result in substantial harm to the child. *Id.* The parent in this circumstance is not required to show a material change in circumstances or that a change is in the best interest of the child.

Three years later, however, in *Dalme v. Dalme*, [09-524 (La.App. 3 Cir. 10/14/09), 21 So.3d 477, *writ denied*, 09-2560 (La. 1/8/10), 24 So.3d 868], the Third Circuit seemed to revert to its earlier standard and burden of proof enunciated in the *Mayeux* case.

In *Dalme,* the child's biological father appealed the trial court's denial of his request for a change of custody after two consent agreements that awarded domiciliary custody to the child's maternal grandparents. In affirming the trial court's judgment, the court stated:

> It is significant that there have been two custody decrees on this matter and that both of them have been consented to by Appellant [the father]. This court has noted that such agreements may only be modified when there is a showing that there has been a material change in circumstances and that the modification would be in the best interest of the minor child.

*Id.* at 480.

The *Dalme* panel cited pre-*Cutts* case law to support its enunciated standard and burden of proof. See *Matter of Landrum*, 97-826, p.4 (La.App. 3 Cir. 12/10/97), 704 So.2d 872, 874.

The court discussed the father's argument that the jurisprudence applied by the trial court in this case stood in contrast to La. C.C. art. 133, responding:

> The article recognizes the parent's paramount right to custody of the child and applies a heavier burden than that required in modifying a consent decree—thus presenting two distinct standards that could be applied in the present matter. We find, however, that the same result should be reached under both tests. So long as awarding custody to the parent would be detrimental to the child and awarding custody to the nonparent would serve the child's best interests, an award of custody to the Appellees would be appropriate in this case.

*Dalme*, 21 So.3d at 481.

The trial court relied on this court's decision in *Cutts*, 931 So.2d 467, in making its determination as to whom bore the burden of proof, finding that the

Dugases were required to prove substantial harm would come to the children if they were returned to the Georges. Although this determination may be somewhat reasonable under the conflicting cases within this circuit, the trial court failed to take note of our subsequent case in *Dalme v. Dalme*, 09-524 (La.App 3 Cir. 10/14/09), 21 So.3d 477, *writ denied*, 09-2560 (La. 1/8/10), 24 So.3d 868, and its move away from *Cutts.* We find our decision in *Dalme* to be controlling.

Following our decision in *Cutts*, this court in *Dalme*, 21 So.3d at 479-80 (bold emphasis added), stated:

> We have been asked to review the trial court's denial of Appellant's request to modify a consent custody agreement pertaining to a minor child. It is significant that there have been two custody decrees on this matter and that both of them have been consented to by Appellant. **This court has noted that such agreements may only be modified when there is a showing that there has been a material change in circumstances and that the modification would be in the best interest of the minor child**.
>
>> If a prior award of custody has been made by consent decree, the proponent for change must show that a material change in circumstances affecting the child's welfare has occurred since the last custody judgment before the court will consider a change in custody. *Bergeron v. Bergeron*, 492 So.2d 1193, 1200 (La.1986); *Millet v. Andrasko*, 93–0520, p[p]. 5–6 (La.App. 1st Cir.3/11/94), 640 So.2d 368, 370–71. If a nonparent has been awarded custody, the parent moving for a change or modification must show a change in circumstances and that the change in custody would be in the best interest of the child. *Millet*, 93–0520, at p[p]. 5–6, 640 So.2d at 371.
>
> *Matter of Landrum*, 97–826, p. 4 (La.App. 3 Cir. 12/10/97), 704 So.2d 872, 874 (quoting *Robert v. Gaudet*, 96–2506, p. 6 (La.App. 1 Cir. 3/27/97), 691 So.2d 780, 783).

In light of our decision in *Dalme*, we find that the trial court committed legal error in following *Cutts*, and in forcing the Dugases to prove the children would be substantially harmed by a return to the Georges.[4]

This rationale is bolstered by the Second Circuit's ruling in *Jones v. Coleman*, 44,543 (La.App. 2 Cir. 7/15/09), 18 So.3d 153. There, the Second Circuit announced the standard and burden of proof which it would apply in cases where a non-custodial parent sought to modify a consent decree awarding custody to a non-parent:

> [T]he initial judgment under Article 133, placing custody of the child with a nonparent, is a determination of the unfitness of the parent and the fitness of the nonparent to provide an adequate and stable environment. The considered versus nonconsidered decree analysis under *Evans* and *Bergeron* does not apply for the consideration of the initial judgment's effect in any future action for the modification of the nonparent's custody. In any proceeding thereafter to restore custody of the child to the parent, and to thereby modify or end the nonparent's custody, the parent shall have the burden of proof and the dual tests of Article 133 shall apply. First, the parent must demonstrate his rehabilitation which eliminates the "substantial harm" threat to the child which existed at the time of the initial judgment. Second, the parent must establish that the adequate and stable environment in which the child was placed with the nonparent as a result of the initial adjudication has materially changed. In the absence of such a change, the parent's claim to modify the nonparent's custody of the child shall not prevail, and the rehabilitation of the parent alone shall afford him only an appropriate visitation allowance under La.C.C. art. 136.

*Id.* at 164.

We agree with the Second Circuit's conclusion that a judgment placing the child in the custody of a non-parent is a determination of that non-parent's fitness to provide an adequate and stable environment. We further agree with their conclusion that the initial La.Civ.Code art. 133 judgment, whether consensual or

---

[4]*Dalme* is even more compelling when considering that in this case, as in that one, there was not just one consent decree granting custody of the minor children to non-parents, but two separate occasions where the Georges voluntarily granted custody of their children to others.

considered, is a determination of the unfitness of the biological parent, thereby vitiating the parent's paramount right to custody, and shifting the burden of proof in any following modification proceedings to the parent.

Accordingly, we disregard our decision in *Cutts* and find that in a case where a non-custodial biological parent seeks to modify custody granted a non-parent under a consent decree, the burden of proof should be on the moving parent to show a material change in circumstances of the custody with the non-parent and that a change of custody would be in the best interests of the child, as in our earlier cases such as *Mayeux v. Mayeux*, 93-1603 (La.App. 3 Cir. 6/1/94), 640 So.2d 686. Therefore, the trial court applied an incorrect burden of proof at the trial below, and thereby committed legal error.

In *Evans v. Lungrin*, 97-541, 97-577 (La. 2/6/98), 708 So.2d 731, the Louisiana Supreme Court discussed the appellate review standard where the trial court has committed legal error. The Supreme Court stated:

> [W]here one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent *de novo* review of the record and determine a preponderance of the evidence. A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. When such a prejudicial error of law skews the trial court's finding of a material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts *de novo*.

*Id*. at 735 (citations omitted).

Accordingly, we will conduct a de novo review of the record before us to determine if the Georges proved a material change in circumstances surrounding

11

the custody of the children and that a change would be in the best interests of the children.

The record contains ample evidence that the Georges have rehabilitated themselves in terms of their prior drug abuse. For that change, they are to be commended. However, because they were found in the initial custody determination to be unfit for custody of the children, their rehabilitation alone is not enough to meet the burden of proof required of them. As noted above, as proponents of change to the consent decree awarding the Dugases' custody, in order to regain custody, the Georges must show a material change in circumstances of the children's custody with the Dugases and that a change of custody would be in the best interests of the children. The record before this court does not show that the adequate and stable environment in which the children were placed with the Dugases has materially changed. The children's home life with the Dugases is barely addressed at all and, when actually mentioned, is indicative of the care and affection the Dugases show them. There is literally no evidence in the record of a change in the circumstances of the children since the Dugases were awarded custody, let alone that a change in custody would be in the best interests of the children. Accordingly, the Georges have not met the burden of proof required of them, and the trial court decision granting their petition for custody must be reversed. We hereby render judgment that their petition for custody is denied. Custody of the children is to be returned to the Dugases.

Even so, the Georges not only moved for custody of the children, but also moved for increased unsupervised visitation. It is clear that the Georges have been granted visitation in some form since the judgment granting the Dugases custody, even if exercised sporadically or allowed begrudgingly. The record before this

court does not allow us to determine the amount of visitation, if any, supervised or not, should be granted to the Georges. Therefore, we remand this matter to the trial court below in order to determine what level of visitation with the Georges would be in the best interests of the children.

Finally, the Dugases did not brief their third assignment of error, their allegation that the trial court erred in removing the children from their home twelve days prior to trial. As this argument was no briefed on appeal, so it is abandoned. Uniform Rules—Courts of Appeal, Rule 2–12.4(B)(4). Instead of briefing that alleged error, the Dugases issue blanket allegations of "willful misconduct of the 'Officers of the Court' to judge shop, forum shop, suppress evidence, charge the Appellants excessive court costs," among other misdeeds. They openly allege a conspiracy between counsel for the Georges, the Hearing Officer below, and the Acadia Parish Clerk of Court's office to remove the children from their home. The use of such language is unnecessary, unsupported by the evidence in the record, and adds nothing substantive to their argument.

Appellate briefs are regulated by Uniform Rules—Courts of Appeal, Rules 2–12.4 and 2–12.5, which require language in a brief to be courteous and free from offensive expressions and insulting criticism. Violations subject the author of the brief to punishment for contempt of court and to having the brief returned. The Dugases, as pro se parties, will generally be allotted more latitude than parties represented by counsel. *See Brooks v. Tradesmen Int'l, Inc.*, 03-1871, (La.App. 4 Cir. 9/1/04), 883 So.2d 444, *writ denied*, 04-2432 (La. 12/10/04), 888 So.2d 843. Nevertheless, we consider it necessary to incorporate in this opinion a formal admonishment of such ill-considered and inappropriate assertions, which at the very least brazenly disparage and impugn the professional character of several

officers of the court. *See Stroscher v. Stroscher*, 01-2769, (La.App. 1 Cir. 2/14/03), 845 So.2d 518. As the Georges did not file any briefs at all in this matter, and therefore, did not ask for any sanctions for this unruly behavior, we exercise our discretion and will not punish the Dugases beyond reprimand. However, if sanctions had been requested, they almost certainly would have been granted.

For the above reasons, we hereby affirm the decision of the trial court in part, reverse in part, render judgment denying the Georges' petition for custody, and remand this case for a determination on visitation. Costs of this appeal are to be assessed against the Georges.

**AFFIRMED IN PART; REVERSED IN PART; RENDERED AND REMANDED.**