602 So.2d 287 (1992)
Susan Marie Kirkpatrick HILL, Plaintiff-Appellant,
v.
Joseph Roger HILL, Defendant-Appellee.
No. 23632-CA.
Court of Appeal of Louisiana, Second Circuit.
June 24, 1992.
*288 Nelson W. Cameron, Shreveport, for plaintiff-appellant.
James L. Fortson, Shreveport, for intervenors-appellees, Richard B. Hill and Lavada Kay Hill.
Before HIGHTOWER, VICTORY and BROWN, JJ.
BROWN, Judge.
Although both parents in this divorce litigation originally sought custody of their minor child, they consented to a judgment awarding sole custody to the child's paternal uncle and aunt who had intervened in the action. Thereafter, the natural mother moved to change custody through a rule to show cause. Following a lengthy trial, the court denied the request for a change in custody. This appeal by the natural mother follows that judgment. Finding no error, we affirm.

FACTS
While living together but unmarried, plaintiff, Susan Pogue, and Joseph Hill had two children. Nancy was born on September 22, 1984, and Brandon on July 27, 1986. Brandon was legally adopted at birth by his aunt and uncle, Richard and Kay Hill.
In January 1987 Susan and Joseph Hill married and separated shortly thereafter in June. In February 1988 physical custody of Nancy, then 3½ years old, was voluntarily given to Richard and Kay Hill. In late September 1988 Susan took physical custody of Nancy for a brief period of time and filed this action for divorce and custody in early October 1988. Richard and Kay Hill later intervened seeking sole custody. In January 1989 Susan was granted a divorce and by consent Richard and Kay Hill were awarded sole custody of Nancy with Susan receiving restricted and supervised visitation.
In August 1990 Susan filed a rule to change custody. In denying Susan's request the trial court determined that a change of custody would be detrimental to the child and that it was in the child's best interests to remain in the sole custody of the nonparents.

DISCUSSION
The original custody decree which arose out of the divorce proceeding was uncontested as no evidence was presented. Thus, that judgment was not a "considered decree." LSA-C.C. Art. 131(B) sets forth who has the burden of proof and the standard of proof in a custody contest between a parent and nonparent. Art. 131(B) states that before custody may be granted to a nonparent without the consent of the parents the court must find that an award of custody to a parent would be detrimental to the child and that an award to the nonparent serves the best interests of the child.
*289 In the instant case at the initial hearing on custody, the natural mother consented to judgment giving sole custody of the child to the intervening nonparents. Additionally, that judgment restricted the mother to limited and supervised visitation. After waiting approximately eighteen months, the mother filed a rule to change custody. After failing to convince the trial court to grant her sole custody, the mother argues on appeal that the nonparents had not carried the burden of proof set out in Art. 131(B).
The law is not clear as to who bears the burden of proof and what proof is necessary at a subsequent hearing by a parent against a nonparent to modify a "nonconsidered" custody decree. Clearly at the initial hearing the nonparent must bear the burden of proof that parental custody would be detrimental to the child and that the nonparent's custody serves the best interests of the child; however, at a subsequent hearing to change custody awarded by a "nonconsidered" decree we find that the burden of proof should be on the party seeking the change and the standard should be the same as is applicable in custody disputes between parents. Thus the natural mother who is seeking a modification of the consent judgment must show a material change in circumstances and that a change in custody is in the best interests of the child. Pulley v. Pulley, 587 So.2d 116 (La.App.2d Cir.1991); Cooper v. Cooper, 579 So.2d 1159 (La.App.2d Cir. 1991).
This change in circumstances would include such factors as stability of environment, parental fitness, rehabilitation and that any previously existing detriment to the child had been corrected.
As noted above, the instant litigation arose from a divorce and custody action in which the natural mother consented to judgment awarding custody to the intervening nonparents. To require the nonparent to meet the burden of proof set forth for an original action in a subsequent change of custody contest initiated by the natural mother would be tantamount to transforming the character of the "nonconsidered" decree of permanent custody to merely a temporary award which clearly would not serve the child's best interests.
Custody disputes are emotionally draining on all participants. It is well established that after an evidentiary hearing the appellate courts must give great weight to the trial court's findings which should be overturned only when there is a clear abuse of discretion. The trial court is in the better position to evaluate the witnesses, parties and community standards. Fulco v. Fulco, 254 So.2d 603 (La.1971).
We find that the evidence adduced at trial supports the award of sole custody to the Hills under the standard for the change of custody following a "nonconsidered" decree. As noted above, the Hills obtained custody of Nancy at 3½ years old when she was voluntarily surrendered by her mother. The Hills have maintained virtually continuous physical custody of Nancy since that date. During this period of time, the child has become an important part of the family and has developed a strong sibling relationship with her natural brother even though they are unaware of their true relationship.
When Nancy first came into the Hill household she had never known a stable home environment and displayed emotional difficulties. The evidence is clear that while living at the Hill home, the child has blossomed into a normal, happy individual and is now excelling in school. The Hills strongly emphasize education and actively participate in the child's studies and school activities. Nancy was placed in a school some distance from the Hills' home because the Hills felt that this school would afford the best educational opportunities. After school the child was under the care and supervision of her paternal grandparents. Richard Hill is a college graduate and Kay Hill attended college. They have steady employment and a stable marriage. The Hills have nurtured Nancy in a wholesome environment for more than half her life.
In contrast, the natural mother's life style has been turbulent and unstable. She *290 has in the past been unable to care for the child, frequently placing the child with her disabled maternal grandmother. When the mother took Nancy to file the original divorce action in September of 1988, she left Nancy with the grandmother. The grandmother later asked the Hills to take Nancy because she was unable to physically care for her. Plaintiff quit high school, had a felony conviction for simple burglary and bore two illegitimate children before her brief marriage to the natural father. Plaintiff's past employment record was sporadic and she moved frequently. Plaintiff instituted this action for a change in custody asserting that her circumstances were improved through pursuing an education, marrying her boyfriend and obtaining employment.
The evidence established that in July 1988 plaintiff moved in with friends, Lucy and Jimmy Pogue. Mr. Pogue had been disabled in a work-related accident and was in the process of undergoing numerous surgeries while drawing worker's compensation benefits. Shortly thereafter, Mrs. Pogue left the home and plaintiff continued to live with Mr. Pogue. A relationship developed and they eventually married in October 1989. Mr. Pogue had three daughters from his previous marriage. The older daughters, Kelly and Jamie, had dropped out of high school at an early age and lived sporadically with plaintiff and their father. Both plaintiff and Mr. Pogue had dropped out of high school in the tenth grade. At trial, Mr. Pogue remained disabled from his injury and was still drawing benefits.
After plaintiff and Mr. Pogue married they moved on numerous occasions, forcing Jamie and Leslie, Mr. Pogue's youngest daughter, to change schools frequently. When Jamie quit school in tenth grade, she had attended six different high schools including three transfers in and out of one school. Since 1989 Leslie had attended four schools. Jamie testified that education was not important to plaintiff and her father and that she had received no discipline as a child, staying out all night at age 12. Jamie indicated that the plaintiff's home was frequently out of food requiring her to keep food in her room. Jamie stated she had severe emotional problems and attributed her father as the source of these problems. Jamie reported that plaintiff did not discipline Nancy and that the child showed no respect for her. Jamie had observed plaintiff and Mr. Pogue take money they had collected for a charity organization and stated that they never purchased any clothing for Nancy. The evidence established that plaintiff had not offered any support to the Hills while Nancy was in their custody. Plaintiff did not regularly attend church and Jamie noted her father had converted to the Mormon religion simply to receive financial assistance. Plaintiff and Mr. Pogue had once moved without telling Jamie requiring her to search for them.
Mr. Pogue's youngest child, Leslie, still lived in the home. While plaintiff and Mr. Pogue maintained they were active in Leslie's education, the testimony established that they frequently failed to attend parent/teacher conferences even though Leslie was experiencing severe academic difficulties and was being tested for special education. Leslie also had excessive unexcused absences which most probably contributed to these difficulties. It appears that education and discipline were not priorities in plaintiff's home.
Further, plaintiff's brief employment at her current job prior to trial did not demonstrate a steady employment record. Mr. Pogue, who was physically disabled from a work-related accident and receiving worker's compensation benefits, was confined to the home and would be charged with the supervision of Nancy after school.
The court-appointed expert, Dr. Gothard, testified that Nancy's best interests required her to reside with the Hills as she believed a move would be psychologically detrimental. Although Nancy was aware of the relationship to her natural mother, Nancy had strongly bonded to the Hills and established roots within that family. Dr. Gothard believed that to change custody would most likely result in negative consequences which would eventually cause problems for Nancy. Further, any upheaval in custody would also interfere with the *291 strong sibling relationship that Nancy had developed with her brother. This expert testimony added little to the evidence already developed. The trial judge was in the better position to draw conclusions from the factual circumstances developed in an adversarial environment.
After reviewing the clear and convincing evidence the trial court found that while plaintiff had begun efforts toward rehabilitation, the child's best interests were served in the Hills' home and it would be detrimental to change custody to the natural mother. We agree.
Nancy has been under the care of the Hills for the greater part of her life and the Hill home is the only stable environment that she has ever known. Nancy is being raised with her brother and has developed into a happy, secure child in contrast to her personality when she first came to the home. Nancy has been encouraged in her academic pursuits in contrast to a noticeable lack of educational support in the mother's household. The Hills provide proper role models for the child and have continued to foster and encourage the child's relationship with her natural mother. The mother's efforts to change her circumstances are not yet adequate to demonstrate a permanent change in her life style.
Finding that the award of sole custody to the Hills was fully supported by the evidence and not manifestly erroneous, it is not necessary to consider plaintiff's other claims.

DECREE
For these reasons, judgment of the trial court awarding sole custody to the Hills subject to plaintiff's reasonable visitation rights is AFFIRMED at plaintiff's costs.