953 So.2d 885 (2007)
Joseph McCOY, Plaintiff-Appellee
v.
Patricia BROCK, Defendant-Appellant.
No. 41,948-CA.
Court of Appeal of Louisiana, Second Circuit.
February 28, 2007.
*886 Law Office of Snell and Robinson, by A. Richard Snell, Bossier City, for Appellant.
J. Spencer Hays, Bossier City, for Appellee.
Before BROWN, CARAWAY and LOLLEY, JJ.
CARAWAY, J.
Following the death of the mother, two children born out of wedlock became the subject of a custody dispute between the father of the children and the maternal grandparents. By agreement between the parties and consent rulings of the court, the father received custody with significant visitation provided the grandparents. After two years of this custody arrangement, the grandparents filed pleadings seeking paternity testing regarding one of the two children. The court denied the request for paternity testing and this appeal followed. We affirm.

Facts and Procedural History
Patricia and Odell Brock[1] are the grandparents of their deceased daughter's children, W.M. and K.M., ages 10 and 8.[2] When the Brocks' daughter, Kendra Brock, died in February 2004, the children remained with the grandparents.
On May 21, 2004, Joseph McCoy filed this suit against the Brocks for custody of W.M. and K.M., alleging his status as their biological father and the existence of formal acknowledgments of paternity. Attached to his petition were the birth certificates of the children listing him as the father. An ex parte order was obtained directing the sheriff to take the minor children into custody and deliver them to McCoy the same day.
Less than three weeks later, the Brocks filed a rule alleging that McCoy's "Petition for Return of Children" was "procedurally defective and without legal basis" and that his right to custody could not be established by name placement on a birth certificate. The Brocks alleged that W.M. and K.M. lived with them for most of their lives and were enrolled in Benton Elementary School. They alleged McCoy, who lived in Shreveport, visited them irregularly and had paid monthly child support only after it was obtained by their daughter through support enforcement services. A preliminary hearing on the custody issue occurred on September 23, 2004, and produced an interim order by consent on October 25, 2004. The trial court awarded the Brocks visitation on alternating weekends and appointed a mental health professional to evaluate the children.
The matter was delayed pending receipt of Dr. Susan Vigen's mental health evaluations of the children. After Dr. Vigen's reports were filed in the record on April 11, 2005, the custody dispute was fixed for trial on July 28, 2005. The court's minute *887 entry for that hearing reflected the following:
Case is called. Spencer Hays was present in open court with plaintiff, Joseph McCoy. Darrell R. Sims is present with defendant, Patricia Brock. Ms. Brock will have continued visitation. The interim order will be the final judgment. Ms. Brock will have the children 5 weeks during the summer break, thereafter every other weekend, with shared holidays. Ms. Brock will have phone communication with children. The point of exchange of the children will be changed from Dairy Queen, and will be decided by the parties. Judgment will be submitted by Spencer Hays. See decree.
The judgment of July 28, 2005, was later admitted in the pleadings by the Brocks to have resulted from the parties' consent and compromise. Nevertheless, a signed judgment specifying the custody arrangement was not signed immediately. With such consent judgment still unexecuted by March 2006, the Brocks petitioned the court, citing the parties' failure to have reached agreement on the "shared holidays" portion of the July 28, 2005 consent judgment. The pleading asked for relief that would clarify this aspect of the custody ruling. Additionally, in this March 20, 2006 pleading, the Brocks made the following allegations:
9.
That just prior to her death the daughter of petitioners and mother of the children questioned the paternity of JOSEPH MCCOY as concerns the child [K.M.] (seven years old).
10.
That your petitioners desire that an order issue compelling the defendant-in-rule to show cause why he should not provide his DNA/Blood for the purposes of establishing the paternity of the minor child [K.M.].
As a result of the Brocks' petition, a hearing was held on April 27, 2006. Although there is no transcript of this hearing in the record, the minutes reflect:
Agreement is read into the record. Judgment to be prepared and signed by May 26, 2006 and any authority needs to be submitted by that date for DNA testing. Case is set for ruling on June 22, 2006.
On June 12, 2006, a "Judgment of Custody" was signed by the trial court. The judgment reflects that it was "rendered" on July 28, 2005, obviously in reference to the prior custody agreement which was specified in writing for the first time. The judgment detailed McCoy's award of custody in relation to the Brocks' visitation rights, including the holiday schedule. The final paragraph of the June 12, 2006 judgment states that "the issue of paternity of the minor child, [K.M.], is reserved for ruling on June 22, 2006, on which date all parties are ordered to return."
On June 22, 2006, the trial court heard argument on paternity testing for McCoy. The Brocks' argument rested on the authority of La. R.S. 9:396. The trial court ruled from the bench as follows:
. . . I think the Court would have the authority to order this, but I'm not going to do that. I would just simply note that the original petition in this case now before the Court was filed on May 21, 2004. Of course that was over two years ago. I think prior to that, from what I understand, Ms. Brock's daughter, the mother of the children sought and was awarded child support against Mr. McCoy, never questioning that he was the father of the children. So I just don't believe that at this late date I'm going to order that Mr. McCoy submit to paternity testing. I think he was *888 recognized in the birth certificate as the father. It's my understanding it's never been questioned until this late date. So the request by Ms. Brock for the paternity testing is denied by the court. I will note your objection to the Court's ruling.
The judgment formally denying the grandparents' request was signed on July 6, 2006. In the motion for appeal filed in August 2006, the July 6, 2006 judgment denying the paternity test was listed as the judgment which is the subject of this appeal.

Discussion
The Brocks' sole assignment of error is that "[t]he Trial Court erred in failing to order the person claiming to be the natural father of an illegitimate minor child whose mother had died to submit to a paternity test and thereafter a trial on the issue of filiation at the request of the maternal grandparents."
In view of the prior consent judgment recognizing McCoy's custody, the Brocks do not seek to appeal the prior determination of custody.[3] The findings of Dr. Vigen's report were never the subject of a contested hearing because of the parties' consent agreement, and the Brocks correctly raise no issue in brief regarding the existing custody award or McCoy's actions as the custodian of the children.
The Brocks' argument principally rests on La. R.S. 9:396(A) which provides as follows:
Notwithstanding any other provision of law to the contrary, in any civil action in which paternity is a relevant fact, or in an action en desaveu, the court, upon its own initiative or upon request made by or on behalf of any person whose blood is involved, may or, upon motion of any party to the action made at a time so as not to delay the proceedings unduly, shall order the mother, child and alleged father to submit to the drawing of blood samples and shall direct that inherited characteristics in the samples, including but not limited to blood and tissue type, be determined by appropriate testing procedure. If any party refuses to submit to such tests, the court may resolve the question of paternity against such party or enforce its order if the rights of others and the interest of justice so require.
(Emphasis supplied). The question therefore presented under this statute is whether the issue of paternity is relevant as the sole ground for modification of K.M.'s custody.
Custody is, and has been, the focus of contention for these parties.[4] The Brocks, as grandparents, have standing for seeking visitation or custody of K.M. from the implications of various Louisiana statutes. La. R.S. 9:344; La. C.C. art. 256(B); La. C.C. art. 133. While existing implementation of a "nonconsidered" custody decree has governed and is presumed to be in the best interest of K.M. and her sister, the grandparents are not precluded from seeking a modification of such custody. Because of the need for flexibility in this area, the law grants courts continuing jurisdiction for modification of prior awards, upon the appropriate showing and according to the best interest of the child. Street v. May, 35,589 (La.App. 2d *889 Cir.12/5/01), 803 So.2d 312, 319; La. C.C. art. 131. After a court's initial award of custody, however, one key factor weighing against further modification of custody is the continuity of the child's established living environment. See generally, Bergeron v. Bergeron, 492 So.2d 1193 (La. 1986), and Evans v. Lungrin, 97-0541 (La.2/6/98), 708 So.2d 731. Where the original custody decree is a stipulated judgment, the party seeking modification must prove (1) that there has been a material change of circumstances since the original custody decree was entered, and (2) that the proposed modification is in the best interest of the child. Id. at 738.
Importantly, even assuming that a paternity test may reveal that McCoy is not K.M.'s father, he remains the parental custodian of her sister and the nonparent custodian of K.M. under court orders that have established the child's living environment for over two years. Moreover, any prospective custody fight, post-testing of McCoy, would still involve the (nonparent) grandparents against the now-alleged nonparent custodian, who has been obligated with providing K.M. and her sibling with a wholesome and stable environment for over two years. Yet, the Brocks make no charge that a material change of circumstances has affected the established living environment of K.M., i.e., the custodial arrangement to which they consented. Their narrow argument of the paternity issue suggests that if McCoy is shown by testing to be the father, nothing in the existing custody arrangement is detrimental to K.M.'s best interest so as to warrant a change in custody.
Instructive for this dispute is our prior ruling in Hill v. Hill, 602 So.2d 287 (La. App. 2d Cir.1992). In that case, the aunt and uncle of the child had challenged the mother's custody of their niece. By consent judgment, the aunt and uncle had previously been awarded sole custody with the mother agreeing to restricted visitation. Eighteen months later, the mother unsuccessfully challenged the custody of the nonparents in the trial court. Addressing the mother's burden of proof against the nonparent on appeal, we ruled:
. . . at a subsequent hearing to change custody awarded by a "nonconsidered" decree we find that the burden of proof should be on the party seeking the change and the standard should be the same as is applicable in custody disputes between parents. Thus the natural mother who is seeking a modification of the consent judgment must show a material change in circumstances and that a change in custody is in the best interests of the child.
Id. at 289. The mother failed to show that a material change in circumstances had occurred, and the nonparents' custody was maintained.
The holding in Hill shows that after custody is initially awarded to a nonparent over a parent, parental primacy may no longer carry the same weight due to the accrual of factors in the custodial environment that develop with the nonparent. Likewise in this case, even assuming nonparents are involved on both sides of this dispute, the Brocks will have to allege a material change in circumstances affecting the best interest of K.M. under the existing custody arrangement, apart from any issue of paternity, to effect any modification of the child's custody.

Conclusion
The trial court's succinct reaction to the Brocks' claim was correct, as its ruling went to the relevance of paternity testing at "this late date" when the pending consensual custody arrangement was not otherwise challenged. Accordingly, we affirm *890 the trial court's ruling. Costs of appeal are assessed to the Brocks.
AFFIRMED.
NOTES
[1] We will refer to the party at interest as the Brocks even though some of the pleadings were filed solely in the name of Patricia Brock.
[2] Their younger sister, T.B., is six years old and not involved in these proceedings.
[3] In Hill v. Hill, 471 So.2d 1130 (La.App. 3d Cir.1985), the court held that a judgment recognizing the parties' stipulated plan for custody was an unappealable judgment under La. C.C.P. art. 2085.
[4] The mention of "filiation" in the Brocks' assignment of error is not explained in brief, and we assume that the Brocks would contest custody if paternity testing established that McCoy is not the father of K.M.