MCCLENDON, J.
In this custody dispute, the father seeks reversal of the trial court's judgment that granted sole custody of his biological child to the child's maternal grandmother. For the reasons that follow, we reverse the portion of the judgment that awards sole custody of the child to the child's maternal grandmother and vacate the remainder of the judgment which sets forth the visitation schedule. We award joint custody to the father and maternal grandmother, with the grandmother to be domiciliary custodian, and remand to the trial court to establish a joint custody visitation schedule.
FACTS AND PROCEDURAL HISTORY
The child, S.M.B., was born in October 2009 during the marriage of Matthew Scott Bernard and Stefanie Nelson Bernard. The couple separated and subsequently divorced when S.M.B. was very young. Stefanie was awarded sole custody of S.M.B. in a considered decree rendered on March 29, 2010. Although Matthew was awarded reasonable visitation, it is undisputed that he did not have a significant role in S.M.B.'s life until December 2015. This is, at least in part, due to Matthew's *563 incarceration.[1] Since his release in December 2015, Matthew has maintained regular contact and visitation with S.M.B. The record reveals that Matthew has turned his life around and has become a productive, law-abiding member of society.
S.M.B., who was nearly eight years old at the time of the instant custody proceeding in September 2017, has lived most of his life with his maternal grandmother, Linda Allen.[2] For the majority of that time, S.M.B. lived in Linda's home with his mother, Stefanie. However, Stefanie became addicted to drugs after S.M.B. was born and, in March 2016, six-year-old S.M.B. found his mother unconscious on the bathroom floor of Linda's home, with needles in close proximity. Linda testified that prior to this she was unaware that Stefanie was using drugs in her home. As a result of her drug use, Stefanie has not lived in Linda's home with S.M.B. since March 2016. Instead, Stefanie has been in and out of drug rehabilitation and/or sober living facilities.
Due to Stefanie's addiction, Matthew filed a petition to modify custody in September 2016, naming Stefanie as a defendant. In his first amending and supplemental petition to modify custody and rule for contempt, Matthew clarified that he was seeking sole custody of S.M.B.[3] In response to Matthew's petition, Linda filed a petition for child custody against Stefanie and Matthew in which she sought sole custody of S.M.B. with Stefanie and Matthew to enjoy supervised visitation. The matters were consolidated for purposes of determining custody.
The initial custody trial took place in February 2017. After hearing testimony from Linda, Stefanie, Matthew, and witnesses on Matthew's behalf, the trial court entered an interim order granting sole custody to Linda Allen with reasonable custodial periods in favor of Matthew.[4] Specifically, the trial court awarded visitation to Matthew on alternating weekends and on Wednesdays following his weekend visitation. Linda was ordered to keep Matthew and Stefanie informed of all medical and educational issues concerning S.M.B. and to include them as authorized persons to receive information from third parties concerning S.M.B.'s school and educational issues. The trial court acknowledged Matthew's significant transformation but expressed concern that removing S.M.B. from Linda's home, the only stable home he has ever known, was not in S.M.B.'s best interest. The trial court awarded custody on an interim basis to enable Matthew to accept more parental responsibility before custody was determined on a permanent basis. At the close of the February 2017 proceeding, the court stated that it intended to reunite S.M.B. with his parents if they continued to make improvements.
*564 The hearing to review custody and to establish a permanent custody plan took place on September 28, 2017. The trial court again heard testimony from Linda, Matthew, and witnesses on Matthew's behalf concerning S.M.B.'s welfare and his relationship with Matthew since the February 2017 interim order. At the conclusion of the hearing, the trial court awarded sole custody to Linda, with Matthew to enjoy liberal visitation on alternating weekends, Wednesdays, holidays, and during the first and third weeks of June and July. A detailed visitation schedule was set forth in the judgment. Stefanie was awarded visitation as mutually agreed upon by Stefanie and Linda. Linda was again ordered to keep Matthew and Stefanie informed of all medical and educational issues concerning S.M.B. and to include them as authorized persons to receive information from third parties concerning S.M.B.'s school and educational issues.
A judgment was signed on November 6, 2017. Matthew timely filed a motion for new trial, which was denied in January 2018. Following this, Matthew filed the instant appeal, assigning the following as error:
The trial court erred in awarding custody of the minor child to Linda Allen because she failed to prove that an award of custody to the father would result in substantial harm to the child.
DISCUSSION
Although a considered decree of custody exists between S.M.B.'s parents, it is undisputed that Stefanie, who was previously awarded sole custody, is unable to care for S.M.B. due to her drug dependency. Stefanie candidly testified that it would be detrimental to S.M.B. if she retained sole custody and acknowledged that a significant change in circumstances has occurred since the original custody decree in 2010. Therefore, modification of the preexisting custody arrangement was required.
This proceeding is the initial custody contest between a parent and a nonparent. In a conflict between a parent and a nonparent, the parent enjoys the paramount right to custody of a child and may be divested of that right only for compelling reasons shown by clear and convincing evidence. LSA-C.C. art. 133 ; see also Smith v. Tierney, 04-2482 (La.App. 1 Cir. 2/16/05), 906 So.2d 586, 590.
In such an initial custody contest between a parent and a nonparent, the burden of proof is on the nonparent to show that granting custody to the parent would result in substantial harm to the child, thus necessitating an award of custody to a nonparent. LSA-C.C. art. 133.[5] In this circuit, the words "substantial harm" carry no magical connotation. "Detrimental" and "substantial harm" have been used interchangeably in the jurisprudence. Smith, 906 So.2d at 590. If divestiture or modification of parental custody is warranted under the article 133 test, custody is awarded in the best interest of the child in the following order of preference: to "another person with whom the child has been living in a wholesome and stable environment, or otherwise to any person able to provide an adequate and stable environment." Smith, 906 So.2d at 590.
*565 The best interest of the child is the guiding principle in all custody determinations. The factors set forth in LSA-C.C. art. 134 for determining the best interest of the child "should be followed in actions to change custody, as well as in those to fix it initially." Tracie F. v. Francisco D., 15-1812 (La. 3/15/16), 188 So.3d 231, 239, citing LSA-C.C. art. 134, Revision Comment (d) (emphasis original).
The trial court is vested with broad discretion in child custody and visitation proceedings because of its superior opportunity to observe the parties and the witnesses who testified at trial. Accordingly, on appeal, the trial court's custody determination is entitled to great weight and should be overturned only when there is a clear abuse of discretion. Smith, 906 So.2d at 591.
Based on the trial court's oral reasons for ruling at the conclusion of the September 2017 custody hearing, it appears the trial court's decision to grant sole custody to the child's grandmother was based, in large part, on the length of time Linda has been S.M.B.'s primary caregiver. The court concluded that removing S.M.B. from Linda's home would cause substantial harm to the child. The record supports this conclusion, and we agree that an award of sole custody to Matthew would be contrary to the best interest of the child. See LSA-C.C. art. 134(4), (5) and (12).[6] However, this finding alone is not sufficient to divest Matthew of all custody rights to S.M.B. Pursuant to LSA-C.C. art. 133, joint custody may be awarded to a parent and nonparent when an award of joint custody to one parent would not cause substantial harm to the child. See LSA-C.C. art. 133, Revision Comment (c); Smith, 906 So.2d at 590 ; McCormic v. Rider, 09-2584 (La. 2/12/10), 27 So.3d 277, 279-80, citing Smith with approval and reinstating the trial court judgment awarding joint custody to the child's biological parents and grandmother (who was also the child's adopted mother).[7]
The record does not establish that an award of joint custody to Matthew would cause substantial harm to the child. Aside from Linda's role as primary caregiver for most of S.M.B.'s life, the parties equally satisfy many of the remaining best interest of the child factors set forth in LSA-C.C. art. 134. Both Linda and Matthew are willing and able to provide a safe and stable home for S.M.B. from this point forward. Each ensures that S.M.B.'s basic needs are met and both provide S.M.B. with his own room in their respective homes.[8] See LSA-C.C. art. 134(3). Matthew and Linda's homes are located within one mile from each other, in the same school district, which will enable the parties to share custody with minimal disruption *566 to S.M.B.'s daily routines. See LSA-C.C. art. 134(8) and (11).
Matthew's absence for the first half of S.M.B.'s life and his criminal record loom over his current efforts to regain custody of his son. However, the trial court recognized, as do we, that Matthew has made significant changes and improvements in his life. He is actively involved in his church and attends church services regularly with S.M.B. It is evident that Matthew is eager to continue teaching his son about his faith and hopes that, because of his troubled past, he will be able to guide S.M.B. away from repeating the same mistakes he made. For her part, Linda testified that she does not attend church and there is no evidence regarding her ability to provide spiritual guidance to S.M.B.; however, there is no indication she is moral ly unfit. Both parties appear to be of sound mental and physical health. See LSA-C.C. art. 134(2), (6), and (7).
The record further establishes that Matthew is affectionate and patient with his son. Witnesses confirmed that S.M.B. enjoys being with this father and has benefitted from Matthew's presence in his life.[9] However, Linda testified that, even when Stefanie lived with them, S.M.B. relied on her as his primary parental figure. See LSA-C.C. art. 134(1) and (2). S.M.B. is doing well in school and is involved in extracurricular activities. Although Linda deserves the credit for ensuring that S.M.B. is well-rounded and well-adjusted, Matthew has taken an active role in these aspects of his son's life over the last (nearly) three years. Matthew attends S.M.B.'s school functions and sporting events.[10] See LSA-C.C. art. 134(2).
This court shares the trial court's concern over Linda's demonstrated unwillingness to facilitate and encourage a close and continuing relationship between S.M.B. and his father. See LSA-C.C. art. 134(10). The record supports the trial court's observation that Linda harbors resentment toward Matthew for his prior disinterest in S.M.B., makes unilateral decisions concerning S.M.B. without consulting Matthew, fails to communicate with Matthew, and is unwilling to accommodate Matthew's requests to modify the visitation schedule. However, Linda has been the primary caregiver, and S.M.B. has clearly thrived while in her care. Additionally, we are cognizant of the fact that Matthew was absent from his son's life for an extended period of time and has a prior criminal history.
Every child custody case must be considered in light of the unique circumstances presented, and the best interest of the child is the chief consideration in all custody determinations. In addition to this, courts must be mindful of a parent's paramount right to the custody of his child. Deville v. LaGrange, 388 So.2d 696, 698 (La. 1980).
Guided by these principles, and after a careful review of the record, we are constrained to find that the trial court abused its discretion in entirely divesting Matthew of custodial rights to his child in favor of a nonparent. While we agree that the record supports the conclusion that awarding sole custody to Matthew and removing S.M.B. from Linda's home would cause substantial harm to the child, we cannot conclude that *567 substantial harm would be caused to S.M.B. by an award of joint custody to Matthew. Instead, we find that an award of joint custody to Linda and Matthew would be in the best interest of the child. Therefore, we reverse the portion of the judgment that divests Matthew of all custodial rights and awards sole custody to Linda. We award joint custody to Linda and Matthew and appoint Linda as domiciliary custodian.[11] Because the parties are awarded joint custody, Linda must confer with Matthew when making all major decisions regarding S.M.B.[12] See LSA-R.S. 9:336 ; Griffith v. Latiolais, 10-0754 (La. 10/19/10), 48 So.3d 1058. In light of this determination, we vacate the remainder of the judgment setting forth the visitation schedule and remand to the trial court to establish a joint custody visitation schedule.[13]
CONCLUSION
For the foregoing reasons, the portion of the trial court's November 6, 2017 judgment awarding sole custody of the minor child, S.M.B., to his maternal grandmother, Linda Allen, is reversed, and the remainder of the judgment setting forth the visitation schedule is vacated. Matthew Scott Bernard and Linda Allen are hereby awarded joint custody of S.M.B., with Linda Allen designated as domiciliary custodian. This matter is remanded to the trial court to establish a joint cusotdy visitation schedule.
Costs of this appeal are assessed one-half to the appellant, Matthew Scott Bernard, and one-half to the appellee, Linda Allen.
REVERSED IN PART, VACATED IN PART, AND REMANDED.

Matthew served a three-and-a-half-year federal prison sentence for bank fraud and was released in December 2015. Matthew also served two prior prison sentences of unknown durations. According to witnesses, Matthew was convicted of first degree robbery at the age of 17, nearly 30 years ago. His second conviction was in 2000 for possession of a firearm by a convicted felon.

Stefanie and S.M.B. lived in Linda's home with the exception of a total of two years, first when S.M.B. was two years old, then again when he was five.

Matthew filed a rule for contempt against Stefanie because he was denied visitation with S.M.B. in the fall of 2016, contrary to the consent decree. The disposition of this request is not evident from the record, and Matthew does not raise this as an issue on appeal.

Stefanie was awarded visitation as could be agreed upon by Stefanie and Linda.

Linda argues that custody was initially established between her and Matthew in February 2017; therefore, she did not have the burden of proving substantial harm at the September 2017 custody review. However, the trial court expressly ruled that the February 2017 ruling was an interim order, entered without prejudice to either party, to be reviewed prior to entry of a permanent custody plan. Consequently, the cases cited by Linda on this issue are inapposite. See McCoy v. Brock, 41,948 (La.App. 2 Cir. 2/28/07), 953 So.2d 885 ; Hill v. Hill, 602 So.2d 287 (La.App. 2 Cir. 1992).

Louisiana Civil Code art. 134 was amended by Acts 2018, No. 412, § 1, eff. May 23, 2018. Since the trial court judgment was rendered prior to the amendment, all citations to this article are to the pre-amendment version. The relevant change to article 134, as it relates to the present matter, is the addition of revised subpart (8) which considers the criminal activity of any party. Matthew's criminal history as well as his current lifestyle are addressed in this opinion.

In McCormic, 27 So.3d at 279-80, an award of sole custody to the grandmother was not in the best interest of the child but neither was removing the child from her home, where he had lived for most of his life. Therefore, an award of joint custody was appropriate.

At the time of the September 2017 hearing, Matthew had recently moved into a home where he intended to live with this wife, once the couple was married, along with S.M.B. and his soon-to-be step daughter. Linda and S.M.B. are the only permanent residents of her home.

In light of S.M.B.'s age, his reasonable preference is not considered. See LSA-C.C. art. 134(9).

At the time of the hearing in September 2017, Matthew was engaged to be married. The couple intended to be married in early September 2017; however, the wedding was postponed due to a family member's unexpected health condition. The couple expressed their intent to be married as soon as possible.

Neither Linda nor Matthew prayed for joint custody; however, this court may enter any judgment which is just, legal, and proper upon the record on appeal. See LSA-C.C.P. art. 2164. See also Griffith v. Latiolais, 10-0754 (La. 10/19/10), 48 So.3d 1058, 1071.

Although Linda is named domiciliary custodian, she is statutorily obligated to exchange information with Matthew and Stefanie concerning S.M.B.'s health, education, and welfare and to confer with them in exercising decision-making authority. See LSA-R.S. 9:336.

By our ruling, we express no opinion regarding the current visitation schedule.