LILJEBERG, J.,
concurs in part and dissents in part with reasons.
hi agree with the majority’s decision to shift the burden of proof from the nonpar-ent to the parent when a parent seeks to modify a non-considered custody decree. Maintaining stability in the child’s life is important and shifting the burden to the parent protects the child’s stability. I further agree with the portions of the standard adopted by the majority which require the parent to prove the elimination of the substantial harm to the child and that the requested change is in the best interest of the child.
I respectfully disagree, however, with the majority’s decision to adopt the second prong of the dual test standard which requires a parent to prove a material change in circumstances with respect to the adequate and stable environment provided by the nonparent. This portion of the standard simply is unnecessary to protect the child’s stability and infringes upon the recognized rights a parent has to the care, custody and management of his child.
I also agree with the majority’s decision to vacate the trial court’s judgment granting sole custody to Francisco due to its error of law in placing the burden of proof on the nonparent to prove the custody modification would cause substantial harm to the child. However, I disagree with the majority’s decision to reinstate the July 14, 2013 stipulated judgment, as well as its characterization of this decision as maintaining the status quo. \ 2“Status quo ” is defined as “the existing state of things at any given date.”[1] The current status quo in this matter is that the child has been living with Francisco for almost four months and has settled into a new school. Reinstating domiciliary status to Kathy is not maintaining the status quo. It is treating this child like a ping pong ball which is not in the child’s best interest.
The majority opinion provides a well-researched and in-depth analysis of the varying standards employed by Louisiana and other state courts when considering a request to modify a non-considered custody decree entered into between a parent and nonparent. The analysis demonstrates the lack of consensus as to the appropriate burden and standard to apply. The difficulties in formulating a standard *819 for this situation is understandable as the Bergeron[2] standard normally applied by courts was not intended to address the complex and varying circumstances leading to a parent/nonparent consent custody decree.
Rather than attempting to mechanically employ existing standards or adopting a standard which only applies to the specific facts at issue, I believe this Court must strive to create a standard which protects and balances the two important interests at stake in this situation — the best interest of the child and a parent’s right to the care, custody and management of his child.
The best interest of the child is the overriding factor applied in all child custody determinations. La. C.C. art. 131; Ramirez v. Ramirez, 13-166 (La.App. 5 Cir. 8/27/13), 124 So.3d 8, 17-18. Furthermore, while the paramount right of a parent is not at its apex in a subsequent proceeding to modify a non-considered custody decree, a parent’s right to custody still [o.must be weighed with all relevant factors to determine the best interest of the child. See Howard v. Oden, 44,191 (La.App. 2 Cir. 2/25/09), 5 So.3d 989, 998, writ denied, 09-965 (La.6/26/09), 11 So.3d 496 (finding that even after an initial considered custody decree between a parent and nonparent, the parent’s paramount right to custody still must be considered and weighed against the principles expressed in Bergeron, supra).
Ultimately, the majority adopts the standard the Second Circuit established in 2009 in Jones v. Coleman, 44,543 (La.App. 2 Cir. 7/15/09), 18 So.3d 153.[3] As the majority recognizes in its opinion, the Jones decision provides the most exhaustive review of the law on this issue. I agree with the majority and the Jones court that the parent seeking the custody modification should bear the burden of proof. This is the greatest point of dissention between the courts which have considered and analyzed this issue. As the majority’s analysis demonstrates, some courts find the burden should remain with the nonparent to protect the paramount right of the parent. The majority of courts have decided to shift the burden to the parent, thereby overriding his/her paramount rights to custody, in order to protect the stability of the child’s environment. I agree the overriding need to protect the best interest of the child requires a shift of the burden to the parent. Placing this burden on the parent is an important measure to protect |4the stability of the child’s environment from a parent’s whimsical request to regain custody.
*820 I further agree the parent should prove: 1) the rehabilitation of the circumstances which constituted the substantial harm to the child; and 2) the requested custody change is in the best interest of the child. As the majority recognizes, the trial court faced a difficult task, but erred as a matter of law by placing the burden of proof on Kathy to establish that sole custody to Francisco would cause substantial harm to the child. When a parent seeks to regain custody of his child after voluntarily ceding sole or joint custody to a nonparent by means of a non-considered decree, the burden on the parent should not simply be to prove any material change in circumstances, but rather the rehabilitation of the substantial harm which led the parent to cede sole or joint custody to the nonpar-ent.
However, I disagree with the second prong of the dual test which requires the parent to prove a material change in the adequate-and stable environment provided by the nonparent. This prong unnecessarily infringes on the parent’s right to the care, custody and management of his child. Even if the parent’s rights are no longer paramount after the initial non-considered decree, they still must be weighed along with other applicable factors. Howard, supra. The parent’s right to custody does not cease to exist entirely because he agreed to cede domiciliary custody to a nonparent.
In the initial custody determination, the adequacy and stability of the environment the nonparent can provide is an important factor to consider in order to avoid moving the child from one unstable situation to another. However, when a parent later seeks to regain custody due to his own rehabilitation, a determination to ensure the stability of the nonparent home is no longer essential. The important factors are whether the parent has ^eliminated the substantial harm and whether the requested change is in the child’s best interest. If the nonparent is no longer providing a stable and adequate environment for the child, then this issue is best addressed as a part of the best interest analysis.
The majority’s standard creates a presumption that the nonparent is providing an adequate and stable environment which the parent must not only rebut, but disprove, in order to regain custody of his child. Unfortunately, this standard seems to be tailored to address the facts of this case, rather than providing a standard which can guide lower courts through a wide range of parent/nonparent custody situations. Where does this standard leave a parent who may deserve to regain custody of their child but who cannot prove the nonparent is providing his child with an inadequate and unstable environment? It leaves him in the untenable situation of needing his own child to be in an inadequate and unstable situation in order to obtain custody of his child. I cannot agree that this is the only standard which satisfies the overarching concern of the best interest of the child. The second prong of the dual test standard adopted by the majority will not protect the child’s best interest in many situations.
The majority’s analysis reveals that the majority of the courts have adopted a general standard which requires the parent to prove a material change in circumstances, which is often the rehabilitation of the parent. See, e.g., Dalme v. Dalme, 09-524 (La.App. 3 Cir. 10/14/09), 21 So.3d 477, 481, writ denied, 09-2560 (La.1/8/10), 24 So.3d 868 (“Rehabilitation could be considered a material change in circumstances which would allow him to meet his burden of proof.”). The Second Circuit’s decisions in Jones and Bowden are the only decisions which require a parent to prove a material change in the environment pro *821 vided by the nonparent. This portion of the | (-.standard is not necessary and creates a potential obstacle that a fit parent may never be able to overcome. •
The child and the stability of the child’s environment are adequately protected by shifting the burden to the parent and by further requiring the parent to prove the change in custody he seeks is in the best interest of the child. Among the factors the court must consider when evaluating the child’s best interest are the capacity of each party to provide an adequate and stable environment, the length of time the child has lived in such an environment and the desirability of maintaining this environment. ' La. C.C. art. 134.
It is unnecessary to require additional proof of a material change in the nonpar-ent’s home. By requiring a parent to overcome this additional obstacle, a parent who acts responsibly and voluntary cedes custody may never be able to regain custody of his child regardless of whether the parent successfully eliminates the “substantial harm.” In many instances, even though there is no material change in circumstances in the environment provided by the nonparent, it may be in the best interest of the child to live with the rehabilitated parent. The potential for infringement of a parent’s right to custody is heightened in a situation, such as the present matter, which involves a non-considered decree with a parent who has retained joint custody over his child.
The majority’s decision to require a-parent who has eliminated the substantial harm to prove an additional material change in the nonparent’s environment could forever penalize parents whose decision to surrender custody was made with the best interest of the child as the paramount factor. For example, a parent may relinquish legal custody because of severely acute financial or health problems. In others, a parent may be too immature |7to bear the responsibility of caring for a child. In some cases, such as the case sub judice, the parent’s relationship may be such that the parent decides it would be better for the child to live with the nonpar-ent due to the parent’s prior lack of involvement and relationship with the child. Sound policy considerations dictate these choices should be encouraged, not curtailed.
In all of these cases, the parent may make extraordinary efforts to cultivate and strengthen, the loving bond with the child, and never be able to regain custody if the environment provided by the non-parent experiences no material' change. The standard adopted by this Court should encourage parents with problems to seek help and strive to rehabilitate themselves. The standard also should reassure a parent that. he need not fear placing his child with a good and loving caretaker. The majority’s standard dissuades a parent from voluntarily agreeing to place custody of his child in another’s capable hands while the parent attempts to resolve the issues which are harming the child. In addition, by requiring the parent to prove a material change in circumstances in the nonparent’s adequate and stable environment,' the parent must take a position adverse to the nonparent with whom he initially agreed. One would hope the nonparent always continues to provide an adequate and stable environment. Installing a standard requiring this confrontation in a situation originating from a point of consent is not in the best interest of the child.
Furthermore, due to the uncertainty regarding the applicable standard, I find it unlikely Francisco understood the obstacles he could face in regaining physical custody when he entered into the joint custody agreement with Kathy. Parents *822 in many cases may make custodial decisions without fully understanding the legal ramifications of their choice. I find it troubling |sthat a parent who intends to further the interests of the child may lose important constitutional rights in that effort.
Therefore, I respectfully disagree with the majority’s adoption of the second prong of the Jones dual test due to my concerns this prong infringes upon the right a parent maintains with respect to the care, custody and management of his child. I am further concerned this portion of the standard may create custody arrangements which are not in the child’s best interest.
I further dissent from the majority’s decision to reinstate joint custody and domiciliary status to Kathy pending the trial court’s rehearing of Francisco’s petition for sole custody. I agree we must vacate the trial court’s judgment awarding Francisco sole custody in order to allow the trial court the opportunity to apply the correct burden of proof and standard. Failing to maintain the status quo in the interim is not in the child’s best interest. In Franklin v. Franklin, 05-1814 (La.App. 1 Cir. 12/22/05), 928 So.2d 90, 94-95, the appellate court recognized the importance of maintaining the present custody situation on remand in order to protect the child’s need for stability:
For these reasons, we reverse the judgment and remand for a new trial, to be heard as expeditiously as possible. However, based on the conflicts and ambiguity in the record on the best arrangement for the children, and children’s overall need for stability and continuity, the present custody is maintained. See Bergeron v. Bergeron, 492 So.2d 1193, 1199 (La.1986).
As the majority recognizes, “stability in a child’s life is essential.” Furthermore, the overriding principle in any custody decision is the best interest of the child. Ramirez, supra. When the trial court granted Francisco sole custody, it allowed a four month transition period before the change went into effect. Despite this transition period, I am certain this change in ^^environment was difficult for the child, particularly since Francisco failed to allow liberal visitation with Kathy. However, the child has now lived in Francisco’s home for almost four months and has settled into a new school environment. It could not possibly be in the child’s best interest to uproot the child again pending the trial court’s ruling on remand.
The more prudent approach to protect this child’s best interest is to maintain the status quo and order the trial court to conduct a new hearing under the new standard proposed by this Court in an expeditious manner.
For all of these reasons, I respectfully dissent from the majority’s decision to reinstate joint custody with Kathy as the domiciliary parent.

. Bergeron v. Bergeron, 492 So.2d 1193 (La.1986).

. I note that three years after issuing its decision in Jones, the Second Circuit applied its prior standard which placed the burden of proof on the nonparent, in Caples v. Caples, 47,491 (La.App. 2 Cir. 7/25/12), 103 So.3d 437, 443:
In custody disputes between a parent and a nonparent, the parent enjoys the paramount right to custody and may be deprived of this right only for compelling reasons. Street v. May, supra; Mills v. Wilkerson, supra. In a subsequent hearing between a parent and a nonparent to modify a non-considered decree, the nonparent bears the burden of proof .and must show that an award of custody to the parent would result in substantial harm. Tennessee v. Campbell, 28,823 (La.App.2d Cir. 10/30/96), 682 So.2d 1274; Bracy v. Bracy, 32,841 (La.App.2d Cir. 10/27/99), 743 So.2d 930.
The Copies decision does not mention its opposing analysis and standard established in Jones.
In 2013, the Second Circuit reverted back to the Jones standard in Bowden v. Brown, 48,268 (La.App. 2 Cir. 5/15/13), 114 So.3d 1194, 1200-01, without discussing its Copies decision.